## UNITED STATES *v.* JOHNSTON.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 111. Argued April 30, 1925.—Decided, May 11, 1925.

1. Under the provision of the "Revenue Act of 1918," taxing admission fees, (Feb. 24, 1919, c. 18, § 800, 802, 40. Stat. 1057, 1120,) a person who has collected such fees at a public exhibition and is required to pay the tax to the United States is a debtor and not a bailee; so that failure to pay the tax is not indictable as an embezzlement of money of the United States, within § 47 Criminal Code. P. 226.
2. A person who collects admission fees to boxing matches is liable to punishment under § 1308b of the above Revenue Act for failure to pay the taxes to the United States, if he really acts on his own behalf in giving the exhibitions, collecting the fees and undertaking to pay taxes, even though, to comply with a state law, the exhibitions are given nominally by a corporate licensee of which he is technically but the agent. P 227.

290 Fed. 120, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals which reversed a sentence of the District Court in a criminal prosecution for failure to pay over admission fees taxes, and for embezzlement.

*Mr. William J. Donovan, Assistant to the Attorney General,* with whom *The Solicitor General* was on the brief, for the United States.

This Court has jurisdiction to grant certiorari at the suit of the Government in a criminal case. It is not

necessary to argue this proposition at length, as it is presumed that the Court considered the matter when it passed upon the petition for certiorari (263 U. S. 692), and when it granted a similar petition at the suit of the Government (*United States* v. *Gulf Refining Co.,* 262 U. S. 738). It is sufficient to submit that the former holding in *United States* v. *Dickinson,* 213 U. S. 92, is not now an authority to the contrary, in view of the significant changes which have been made in the statute since that case was decided. Act of March 3, 1911, c. 231, § 240, 36 Stat. 1087, 1157, amending the Act of March 3, 1891, c. 517, § 6, 26 Stat. 826, 828. An examination of the committee reports, and of the statements made by committee members upon the floor of the Senate, clearly shows that the framers of that section of the Judicial Code intended that the United States should be permitted to bring up criminal cases from the Circuit Court of Appeals by certiorari. The section was, in fact, amended during its passage through the Senate, in order to accomplish that result. Cong. Rec. 61st Congress, 3rd Sess., vol. 46, part 3, p. 2134; vol. 46, part 4, pp. 3762, 4000, 4001.

The Club was formed and the license procured at Johnston's request, at his expense, and for his benefit. The sole reason for its existence is to be found in the provision of the state laws which permitted only incorporated clubs to hold boxing licenses. The whole device was merely a subterfuge to permit Johnston to do indirectly through the medium of a corporation what the state law prevented him from doing directly as an individual. One may be liable criminally for acts done under the cloak of corporate existence, even though the corporation is a separate entity. *United States* v. *Lehigh Valley R. R. Co.,* 220 U. S. 257, 274; *In re Reiger,* 157 Fed. 609; *Wood* v. *United States,* 204 Fed. 55, 58. In this case, however, it is submitted that the acts charged

in the indictment were from the beginning to end the direct acts of the defendant Johnston alone. The contract between the Club and Johnston was in reality nothing more nor less than a lease to the defendant of the Manhattan Casino for a specified cash rent, and was so understood by all parties. Johnston, as lessee, controlled all the arrangements for the contests, sold the tickets, and collected the tax. Johnston had agreed with the Club that he would pay both state and federal taxes. His assistant, O'Brien, actually did pay the state tax in full, submitting over his signature the reports required by the state Treasurer. But neither he nor anyone else took any steps toward paying over the federal tax to the Collector of Internal Revenue. The Revenue Act of 1918 requires that the tax shall be paid by the spectators and collected by the person who receives the payments from the spectators. The Act looks to the person who is in actual control of admissions. Treas. Dep. Int. Rev. Reg. 43, part 1, Art. 64, p. 98, approved January 26, 1921. Even if it be held that the Club was also liable for the tax, the defendant Johnston was none the less properly convicted. Even assuming that the Club failed to account for the taxes, it was not necessary to charge that Johnston had aided or abetted in the failure. Under § 1308 (d), and § 332 of the Penal Code, he could be charged as a principal.

A collector of tax moneys is not a debtor to the United States; he is a bailee. *United States* v. *Thomas,* 15 Wall. 337, 352. The amount of this tax is kept separate from the price of admissions; and the regulations of the Treasury Department require that the price of admission, the amount of the tax, and the total of admission plus tax be printed as separate items on every ticket sold. It is submitted that the clear purpose of both the law and the regulations is to impose upon the person collecting admissions the capacity *quoad haec* of a govern-

ment agent. He is the instrumentality through which the United States takes the tax directly from the spectators. The case is not analogous to that of income or other taxes of that nature. The collector of entertainment taxes stands upon a different footing. The tax is not upon him; it is upon the spectator. His duty is to collect the tax from the spectator. He collects it, and it comes lawfully into his possession, as the agent of the United States; and if he converts it to his own use, he commits the crime of embezzlement. *Grin* v. *Shine*, 187 U. S. 181; *United States* v. *U. S. Brokerage & Trading Co.*, 262 Fed. 459; *Schell* v. *United States*, 261 Fed. 593.

*Mr. Thomas C. Bradley*, for respondent.

The purpose of the Criminal Appeals Act is to grant to the Government the right to review the decisions of the lower courts only in cases therein specifically enumerated. Since that act is inclusive and no provision is made for a writ of certiorari by this Court directed to the Circuit Court of Appeals, where the Circuit Court of Appeals had reversed a judgment of conviction, this Court has no jurisdiction to entertain the petition filed by the Government. Section 240 of the present Judicial Code in no way supersedes the Criminal Appeals Act, and in no way does it enlarge the right of the Government to appeal in the case at bar by certiorari or other means. *United States* v. *Keitel*, 211 U. S. 370; *United States* v. *Dickinson*, 213 U. S. 92.

The indictment is fatally defective in that it wholly fails to charge any offense against the laws of the United States. It is not conceivable that a person or corporation owing a duty under the Revenue Law to collect and pay taxes to the Government can by contract shift that obligation to another so that the other will be obligated to the Government and liable civilly and criminally for failure to carry out such contract. Such a contract may

properly be made by the parties, but if made it is their responsibility as to its faithful performance. If A were proprietor of a theater, duly licensed and doing business, there is no reason why he should not, for reasons of his own, contract with B to operate the theater, under his license, and pay him a fixed sum weekly or monthly and in addition provide that B pay license-fees, fixed charges and expenses of entertainment and all state and federal taxes. That was exactly what was done in this case. But can it be said that by this contract A is relieved of liability to the Government either as to the collection or payment of the taxes and that the Government must look to B for satisfaction? To answer in the affirmative would be to open the door to fraud and permit a responsible party with property to substitute a totally irresponsible party in his stead and thus defraud the Government of large sums of money. Even if it were shown that he actually and in fact personally collected the tax under the contract, he could not be held under the indictment in this case, for no such theory is presented and no allusion to such a contract or arrangment is made. He is charged as though he held the exhibitions as principal and there is no reference made to the Central Manhattan Boxing Club, Inc., or to any contract with that Club. The failure to plead the contract or charge the facts upon which the Government relied to support such a theory, we submit, renders the indictment a nullity.

Sections 800 and 802 of the Revenue Act of 1918 provide (a) that all persons that pay and secure admission to any place where admissions are charged shall pay, in addition to admissions, a tax of 1 cent for each 10 cents or fraction thereof paid for admission, or (b) that, being admitted free to any place where admissions are charged, "the person so admitted" shall pay the amount of the tax and that in both instances the tax shall be collected by the person receiving any payments for ad-

mission or who admits any person free, and (c) that returns and payments of the amounts so collected shall be made as provided in § 502. It will be seen that it is the duty of the person securing admissions to pay the tax and the duty of the proprietor to first collect the tax and then pay it over to the Government. He is penalized by the Act, § 1308(b), if he fails to do either. He cannot pay it in the first instance. He must collect it from the persons securing admissions, whether paid or free, and it is not a tax on admissions paid, but is a tax on "admissions" based on the price of the tickets, whether paid or free, by which " admissions " are secured.

The only return required by the Act is the return of the amount of taxes collected, as provided in the sections quoted above. Yet the pleader charges and the Court permitted conviction for failure to make a return of the amount of admission fees collected. As the law required that the tax be collected on all " admissions," paid or free, and as the reports of the New York State authorities show that a large percentage of the " admissions" were free, it can readily be seen that to report merely the amounts " of money collected . . . in admissions " would fall far short of serving any useful purpose. The requirement of the Act was, as stated, to make " returns of the amounts so collected (taxes) at the same time and in the manner as provided in § 502."

The offense of embezzlement here charged is not defined or created by federal law. Section 47 of the Criminal Code merely provides that " whoever shall embezzle . . . money of the United States, shall be fined," etc. The statute simply adopts and fixes a punishment for the offense of embezzlement at common law. *United States* v. *Allen*, 150 Fed. 152. In the indictment, there is no allegation of any relation or capacity whatever, nor any allegation that defendant was authorized to collect the taxes for the United States.

55627°—25——15

The Treasury Department, by Regulation 43–1, Art. 35, has held that the money collected as admissions tax is not the property of the Government until paid to the Government, and evidently Congress had that in mind when it provided for payment by those who procured admissions, and collection and accounting by the proprietor, with drastic criminal penalties for failure of either to comply with the Act (§ 1308–b).

The money which the defendant is charged with having embezzled, was not money of the United States, but was simply money due the United States. Int. Rev. Bulletin, Vol. I, No. 25, June 19, 1922, p. 18.

MR. JUSTICE HOLMES delivered the opinion of the Court.

The respondent, Johnston, was convicted on an indictment charging in separate counts a failure to pay over the tax upon admission fees received at certain boxing matches and a failure to make return to the collector of internal revenue of the money so received, contrary to the Act of February 24, 1919, c. 18, §§ 800, 802, 1308(b); 40 Stat. 1057, 1120, 1143. He also was convicted under § 47 of the Criminal Code of embezzling the amounts collected as taxes on the same occasions. Act of March 4, 1909, c. 321, § 47; 35 Stat. 1097. The judgment was reversed and the District Court was directed to dismiss the indictment by the Circuit Court of Appeals. 290 Fed. 120. A writ of certiorari was granted by this Court as the decision was said to be of grave importance to the administration of the revenue laws. 263 U. S. 692.

So far as the charge of embezzlement goes we think that the Court below and the intimation of the Treasury Department that it followed were clearly right. However it may have been under other statutes (*United States* v. *Thomas*, 15 Wall. 337) it seems to us that under this law the person required to pay over the tax is a

debtor and not a bailee. The money paid for the tax is not identified at the outset but is paid with the price of the ticket that belongs to the owner of the show. We see no ground for requiring the ticket office of a theatre to create a separate fund by laying aside the amount of the tax on each ticket and to keep it apart, either in a strong box or as a separate deposit in a bank. Reports are required only once a month, §§ 802, 502, which does not look as if the Government were dealing with these people otherwise than with others answerable for a tax. Further argument seems unnecessary upon this point.

On the other counts we are of opinion that the Court below was wrong. We do not grant a certiorari to review evidence and discuss specific facts. But the Court seems to have regarded the formal relations of Johnston to the Central Manhattan Boxing Club, Inc., made necessary by the laws of New York, as conclusive upon his relations to the United States. The laws of New York permitted a license only to a corporation and so Johnston may have assumed the technical position of agent and manager for the Club. But if as a matter of fact all this was machinery to enable Johnston to give exhibitions, collect the entrance fees and make himself liable for the tax, it properly might be alleged that he collected the fees and if he wilfully failed to pay that he refused and failed to pay the tax. As the jury found Johnston guilty, although with an earnest recommendation of mercy, we are of opinion that the sentence and judgment of the District Court, which was much less than it might have been under § 1308(b), must be affirmed.

*Judgment of the Circuit Court of Appeals reversed.*
*Judgment of the District Court affirmed.*