**PINA v. UNITED STATES.**

No. 11541.

Circuit Court of Appeals, Ninth Circuit.

Jan. 23, 1948.

DENMAN, Circuit Judge, dissenting in part.

Arthur B. Knight, of Los Angeles, Cal., for appellant.

James M. Carter, U. S. Atty., and Ernest A. Tolin, Chief Asst., Norman W. Neukom, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before GARRECHT, DENMAN and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The appellant was indicted on the charge of having uttered and published as true, and having caused to be uttered and published as true, the endorsement of the payee of a United States Treasurer's check for $100, knowing that such writing was "false, forged and counterfeited", and "with intent to defraud the United States."

The evidence showed that the check, payable to Felix T. Soto, was cashed at a payroll-cashing agency, and that the appellant received part of the proceeds. Soto testified that he did not endorse the check, which was for mustering out pay.

One of the appellee's witnesses was the confessed accomplice of the appellant. The accomplice testified that the appellant suggested that the accomplice cash the check; that the appellant drove the accomplice to a place where payroll checks were cashed and waited while the accomplice went in and cashed the check; and that the appellant then received part of the proceeds.

The appellant's only witness was an eighteen-year-old girl who testified that she and the appellant had lived together as man and wife for about three years. She stated that, at the request of the accomplice, she "signed" the check.

After the argument to the jury, but before the court gave its instructions, counsel for the appellant stated to the court that counsel had learned that the accomplice had been put on probation, and that such fact was one "that should be considered by the jury in weighing his testimony." The appellant's counsel accordingly moved to reopen the case to produce evidence to that effect. That motion was denied.

The court likewise refused to give an instruction to the jury that contained the statement that the jury should consider the possible hope of reduction in punishment as a consideration "that may have motivated the alleged accomplice in his testimony".

From a judgment of conviction, the present appeal has been taken.

The appellant presents the following questions for determination by this Court:

1. Did the refusal of the trial court to give the appellant's requested instructions, and the denial of the appellant's motion to reopen the case to show that the alleged accomplice had been placed on probation, constitute prejudicial error?

2. Was there sufficient evidence of intent to defraud the United States to sustain the conviction?

We will consider each question in the order given.

1. According to counsel's own statement in the court below, the "alleged accomplice" had been placed on probation at the time that he testified. It is therefore difficult to understand how he could entertain a "possible hope" of reduction in punishment, when in fact, according to counsel's own assertion, the original plan to send the accomplice to a penal institution had already been changed, and he had been granted probation instead. How a person can hope for a benefit that he has already received is a feat of mental gymnastics that counsel does not attempt to explain.

Be that as it may, in any event, as a matter of law, the appellant was entitled to neither a reopening of the case nor to the instruction that he requested.

This court has held that refusal to give an instruction regarding the credibility of an accomplice is not reversible error. In Diggs v. United States, 9 Cir., 220 F. 545, 552, 553, Judge Gilbert said:

"First. A refusal to instruct as to the value of the testimony of an accomplice is not error for which a judgment should be reversed. * * * And it is believed that no court, state or federal, has held that it is reversible error to refuse to caution the jury to scrutinize with care the testimony of an accomplice. * * *

"In the present case the court instructed the jury that the evidence must be such as to satisfy their minds beyond a reasonable doubt and to a moral certainty, and said that they should take into consideration the character and conduct of each witness, his relation to the controversy and to the par-

ties, his expressed or apparent bias or partiality, the reasonableness or unreasonableness of the statements he makes, and all other elements which tend to throw light upon his credibility."

In affirming the judgment of this court in the Diggs case, supra, the Supreme Court, in 242 U.S. 470, 495, 37 S.Ct. 192, 198, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann. Cas.1917B, 1168, used the following language: "It is urged as a further ground of reversal of the judgments below that the trial court did not instruct the jury that the testimony of the two girls was that of accomplices, and to be received with great caution and believed only when corroborated by other testimony adduced in the case. We agree with the circuit court of appeals that the requests in the form made should not have been given. In Holmgren v. United States, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861, 19 Ann.Cas. 778, this court refused to reverse a judgment for failure to give an instruction of this general character, while saying that it was *the better practice* for courts to caution juries against too much reliance upon the testimony of accomplices, and to require corroborating testimony before giving credence to such evidence. *While this is so, there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."* [Authorities cited.] [Emphasis supplied.]

This doctrine has been followed in other circuits. Referring to the caution against the testimony of accomplices, Judge Learned Hand, in United States v. Becker, 2 Cir., 62 F.2d 1007, 1009, said: "The warning is never an absolute necessity. It is usually desirable to give it; in close cases it may turn the scale; but it is at most merely a part of the general conduct of the trial, over which the judge's powers are discretionary, like his control over cross-examination, or his comments on the evidence. If he thinks it unnecessary—at least when, as here, the guilt is plain—he may properly refuse to give it. Such we understand to be the upshot of the decisions. [Many cases cited.] " [1]

The same rule has been adopted "even in cases where the confederate appears for the prosecution motivated by hope of immunity". Weaver v. United States, 8 Cir., 111 F.2d 603, 608. Cf. Wellman v. United States, 6 Cir., 297 F. 925, 933, 934.

In the instant case, however, the trial court did give an instruction relative to accomplices: "An accomplice is one who knowingly and voluntarily and with common intent with another person, unites with such person in the commission of an offense. By reason of their participation in the alleged criminal act, accomplices do not become incompetent witnesses. The jury has a right to consider the testimony of an accomplice, keeping in mind, however, that such testimony is to be weighed and scrutinized with great care, and that, if it is not corroborated by other competent evidence, it should not be relied upon unless, notwithstanding the fact that it stands alone, it produces in the minds of the jury a full and positive conviction of its truth. The testimony of an accomplice, if believed by you, may be sufficient to support a verdict of guilty, even though such testimony is not corroborated."

In another part of his charge, the learned judge below thus instructed the jury as to credibility in general: "You should carefully scrutinize the testimony given, and in so doing consider all of the circumstances under which any witness has testified, his demeanor, his manner while on the stand, his intelligence, *the relations which he bears to the Government or the defendant, the manner in which he might be affected by the verdict and the extent to which he is contradicted or corroborated by other evidence, if at all, and every matter that tends reasonably to shed light upon his or her credibility."* [Emphasis supplied.]

Taken together, these instructions were sufficient, and the failure to give the one asked for by the appellant was not reversible error. Indeed, instructions substan-

---

[1] See also United States v. Block, 2 Cir., 88 F.2d 618, 621, certiorari denied 301 U.S. 690, 57 S.Ct. 793, 81 L.Ed. 1347; Hanks v. United States, 4 Cir., 97 F.2d 309, 312; Pine v. United States, 5 Cir., 135 F.2d 353, 355, certiorari denied 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 1079; Kempe v. United States, 8 Cir., 151 F.2d 680, 686, certiorari denied 331 U.S. 843, 67 S.Ct. 1534, 91 L.Ed. ——.

tially the same as those given in the instant case have been approved in this and other circuits.[2]

Finally, it is significant that in his reply brief, the appellant does not press this point, but concedes that "the argument on the question of whether it was prejudicial error for the trial court to refuse to give defendant's requested jury instruction No. 3 and to deny defendant's motion to reopen the case is clearly addressed to the discretion of this court and will not be further argued in this Reply Brief."

Exercising our admitted discretion in this matter, and after a careful examination of the record, we hold that the court below did not commit reversible error in refusing to give the desired instruction or in declining to reopen the case.

■ 2. We turn now to the question of whether or not there was sufficient evidence of intent to defraud the United States to sustain the judgment of conviction.

The statute upon which the indictment in this case was based is 18 U.S.C.A. § 73, which reads as follows: "Whoever shall falsely make, alter, forge, or counterfeit, or cause or procure to be falsely made, altered, forged, or counterfeited, or willingly aid, or assist in the false making, altering, forging, or counterfeiting, any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States, or any of their officers or agents, any sum of money; or whoever shall utter or publish as true, or cause to be uttered or published as true, any such false, forged, altered, or counterfeited deed, power of attorney, order, certificate, receipt, contract, or other writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or whoever shall transmit to, or present at, or cause or procure to be transmitted to, or presented at, any office or officer of the Government of the United States, any deed, power of attorney, order, certificate, receipt, contract, or other writing, in support of, or in relation to, any account or claim, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited, shall be fined not more than $1,000 and imprisoned not more than ten years."

In the first place, it has been held that a Government check or an endorsement thereon is a "writing" within the purview of the above statute. Prussian v. United States, 282 U.S. 675, 679, 51 S.Ct. 223, 75 L.Ed. 610; DeMaurez v. Squier, 9 Cir., 144 F.2d 564, 565, certiorari denied 323 U.S. 762, 65 S.Ct. 95, 89 L.Ed. 610; Buckner v. Aderhold, 5 Cir., 73 F.2d 255, 256; Conklin v. Cozart, 5 Cir., 158 F.2d 676, 677.

The appellant argues "that no intent to defraud the United States" has been shown in the instant case. Throughout his argument, however, it is clear that he is basing his contention upon the fact that there was shown no intent that the Government should suffer a *pecuniary* loss through the forging of Soto's endorsement.

■ It is well settled that the contemplated infliction of a monetary loss upon the Government is not a necessary ingredient of an intent to defraud the United States. In Haas v. Henkel, 216 U.S. 462, 479, 480, 30 S.Ct. 249, 253, 54 L.Ed. 569, 17 Ann.Cas. 1112, the court said: " * * * *But is it not essential that such a conspiracy shall contemplate a financial loss or that one shall result. The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government.* Assuming, as we have, for it has not been challenged, that this statistical side of the Department of Agriculture is the exercise of a function within the purview of the Constitution, it must follow that any conspiracy which is calculated to obstruct or impair its efficiency and destroy the value of its operations and reports as fair, impartial, and reasonably accurate, *would be to defraud*

[2] Meadows v. United States, 9 Cir., 11 F.2d 718, 721, certiorari denied 273 U.S. 702, 47 S.Ct. 97, 71 L.Ed. 848; Cheatham v. State of Texas, 5 Cir., 48 F.2d 749, 751; United States v. Schwartz, 2 Cir., 150 F.2d 627, 628, certiorari denied 326 U.S. 757, 66 S.Ct. 97, 90 L. Ed. 454; United States v. Schanerman, 3 Cir., 150 F.2d 941, 943.

*the United States by depriving it of its lawful right and duty of promulgating or diffusing the information so officially acquired in the way and at the time required by law or departmental regulation."* [Emphasis supplied.] See also Hammerschmidt v. United States, 265 U.S. 182, 188, 44 S. Ct. 511, 68 L.Ed. 968.

The appellant seeks to brush aside the authority of decisions such as the above, with the following observation: "It is true that there are cases under Section 88 of Title 18 [the conspiracy statute], United States Code, that put a very broad meaning upon the words 'defraud the United States in any manner and for any purpose', but it is submitted that the broad construction placed upon this comprehensive catchall statute should not be carried over into Section 73 of Title 18, United States Code, which has a much more limited purpose."

In this connection, however, it is pertinent to remark that, in United States v. Plyler, 222 U.S. 15, 17, 32 S.Ct. 6, 56 L.Ed. 70, Mr. Justice Holmes, construing R.S. § 5418, one of the sources from which 18 U.S.C.A. § 72 has been taken, said: "It now must be regarded as established that 'it is not essential to charge or prove an actual financial or property loss to make a case under the statute.' "

And as one of the authorities for his statement, the associate justice cited Haas v. Henkel, from which we have quoted supra.

■ As this court has already pointed out, 18 U.S.C.A. § 73, supra, upon which the instant prosecution is based, is "a companion statute" of 18 U.S.C.A. § 72, just referred to. Johnson v. Warden, 9 Cir., 134 F.2d 166, 167, certiorari denied 319 U. S. 763, 764, 63 S.Ct. 1320, 87 L.Ed. 1714. See also Head v. Hunter, 10 Cir., 141 F.2d 449, 451. The identical canons of construction, therefore, can properly be applied to both.

■ In construing 18 U.S.C.A. § 72, supra, we have repeatedly held that "in order to establish a purpose to defraud the United States, within the contemplation of § 28 of the Criminal Code [18 U.S.C.A. § 72, supra], it is not necessary to prove that the government would thereby suffer a pecuniary loss. It is enough that the unlawful activity be engaged in for the purpose of frustrating the administration of a statute, or that it tends to impair a governmental function. [Cases cited.]" Johnson v. Warden, supra, 134 F.2d at page 167.[3]

■■ Finally, the appellant argues that "the evidence shows an intent to defraud the operators of the check-cashing service by obtaining from them approximately $100.00 in cash in exchange for a check bearing a forged endorsement with knowledge of the forgery." From this the appellant argues that this does not constitute the offense denounced by 18 U.S.C.A. § 73, supra.

Precisely the same type of argument was made in the case of Head v. Hunter, supra. At page 451 of 141 F.2d, the court said: "It is further contended that the forging or altering of the permit, as set forth in the indictment, did not encompass a purpose to defraud the United States, which is an essential ingredient of the statutory offense. Rather it is argued that it was not the intention of the parties to defraud the United States of any money or property, but to *defraud a private citizen.* It is true that the indictment does not charge the United States suffered a pecuniary loss, but a pecuniary loss to the Government is not prerequisite to the crime of defrauding the United States. It is enough if the acts charged frustrate the administration of a statute or *tend to impair or impede a governmental function.* [Many cases cited.]" [Emphasis supplied.]

In the instant case, the disbursing of mustering-out pay to Soto was one of the "lawful governmental functions" of the United States. By causing the forged endorsement to be uttered, the appellant "interfered with", "impeded", "obstructed", or "impaired" that lawful governmental function. And it must be assumed that he

---

[3] See also Hart v. Squier, 9 Cir., 159 F.2d 639, 640, certiorari denied 331 U. S. 815, 67 S.Ct. 1203; United States v. Goldsmith, 2 Cir., 68 F.2d 5, 7, certiorari denied 291 U.S. 681, 54 S.Ct. 559, 78 L.Ed. 1068; United States v. Serpico, 2 Cir., 148 F.2d 95; United States v. Tommasello, 2 Cir., 160 F.2d 348, 350.

intended that this would be the result of his act. "A man is presumed to intend to do what he actually does." Haugen v. United States, 9 Cir., 153 F.2d 850, 853.

■ We do not consider in point the case of Meeks v. United States, 9 Cir., 163 F.2d 598. The facts of each case must be considered in order to determine whether the trial judge abused his discretion. The facts in the Meeks case, supra, are far different from those in the instant case. There, in a murder case, the objections were seasonably made, and for a cogent reason. Here, counsel moved to *reopen* the case, and gave a reason that, on his own showing, could not possibly be pertinent; namely, that the appellant should be allowed to show that the accomplice might have been moved to give his testimony by the *hope* that his sentence might be reduced. As we have already pointed out, the motive of *hope* is not here relevant, since the reduced sentence—i. e., probation —had already been granted to the accomplice.

Accordingly, the judgment is affirmed.

HEALY, Circuit Judge.

I concur in Judge Garrecht's disposition of the appeal but wish to add a word on the only point presented to us that seems to me at all worthy of notice, namely, the denial of appellant's request to reopen the case for the purpose of showing that the accomplice, Rodriguez, had been put on probation.

On cross examination by appellant's counsel Rodriguez testified that he had pleaded guilty to the charge of uttering the forged endorsement. The subject was not further pursued. In denying the request to reopen the court observed that since Rodriguez had been granted probation his case was closed and no inducement existed at the time of trial for his testifying one way rather than another, hence the fact of his probation was immaterial.

While it is true that at the time of testifying Rodriguez was under no promise or hope of reward, I think that if the case had been a close one on its facts it would have been advisable to grant the motion to reopen so that the fact of probation might

be before the jury for what it was worth. Some cynic has defined gratitude as a lively appreciation of favors to come. However that may be, it is arguable that a sense of gratitude on the part of one who has been given probation might influence him to shade or color his testimony favorably to the government in the later trial of an accomplice. It may even be arguable that a probationer would feel himself under an implied obligation to be helpful in that way. But it is clear from the record before us that proof of the fact of probation could not have changed the result.

Independently of Rodriguez' testimony, the showing of appellant's participation in the felonious uttering of the check was conclusive. The evidence included a voluntary statement, amounting to a confession, made by appellant to a secret service agent. The account of the matter contained in this admission or confession did not differ in any essential particular from the account given by Rodriguez. Appellant did not take the stand or attempt in any way to impeach the confession or refute the testimony of the agent concerning it. The only witness called by the defense was Sally Arias, a girl with whom appellant was living. This witness was shown to have made and signed a statement tending directly to incriminate appellant in the uttering of the forgery. On cross examination at the trial she admitted having made the statement, which was then introduced in evidence. Appellant and Rodriguez, according to this signed declaration of the Arias girl, accompanied each other at the time the treasury check was taken out to be cashed, appellant furnishing the car. In this respect her account squares with the stories both of appellant and Rodriguez. The journey taken by the two for the purpose of getting the check cashed was the crucial incident in the case. The Arias girl, admittedly not being along, had no means of knowing what happened in the course of it. Her testimony had to do largely with the unimportant question of who had forged the endorsement of the payee's name. As to this, it is to be noted that appellant was not charged with having forged the endorsement but only with uttering it. The only item she had to offer of any substan-

tial importance to appellant was her testimony to the effect that he did not accompany Rodriguez at the time the check was cashed. Her signed statement, however, effectively cancelled out that testimony.

In this condition of the record there can be no justification for reversing the conviction on speculations concerning the possible mental reactions of a probationer.

DENMAN, Circuit Judge (concurring and dissenting).

I concur in the affirmance on the ground stated in Judge Healy's opinion.

I dissent from the statement of Judge Garrecht's opinion that a probationer cannot be a witness prejudiced in favor of the government because he has obtained a release from incarceration. As stated by the Supreme Court in Anderson v. Corall, 263 U.S. 193, 196, 44 S.Ct. 43, 44, 68 L.Ed. 247. "The parole authorized by the statute does not suspend service or operate to shorten the term. While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term, less allowance, if any, for good conduct. While this is an amelioration of punishment, it is in legal effect imprisonment. * * *"

The jury is entitled to know of a witness offered by the plaintiff government that he is in the custody of that plaintiff, particularly where, as here, he may at any time be returned by that custodian from freedom of incarceration to his prison cell for a breach of any of the conditions placed upon him by the parole board.

This court, in Meeks v. United States, 9 Cir., 163 F.2d 598, 599, stated that "It is difficult to imagine a more direct and intimate relationship likely to affect one's testimony than that between the plaintiff government and its most important witness in establishing this first degree murder. Only by following the stated and other conditions of the parole would the plaintiff permit the witness to remain out of the penitentiary. * * *"

Judge Garrecht's opinion is an attempt to refute that holding in its statement that "as a matter of law," the defendant in a criminal case is not "entitled to * * * a reopening of the case" when, before it is submitted to the jury, it is discovered that one of the government's chief witnesses is in its control as a probationer and likely to be prejudiced in favor of his litigating custodian.

I further dissent from that opinion distinguishing our decision in the Meeks case on the ground Meeks was accused of murder, while Pina is charged with a lesser felony. Pina is a first offender, but whether such or a person having prior sentences, he is nonetheless entitled to be free of a conviction on the testimony of a witness concerning whom the fact is withheld from the jury that he may be deeply prejudiced.