**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**George Lorenzo COLLINS, Defendant-Appellant.**

**No. 26932.**

United States Court of Appeals,
Ninth Circuit.

March 1, 1972.

As Modified on Denial of Rehearing
July 26, 1972.

Richard A. Bancroft (argued), San Francisco, Cal., for defendant-appellant.

James W. Meyers (argued), Dept. of Justice, Washington, D. C., James L.

Browning, U. S. Atty., James H. Daffer, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before KOELSCH and HUFSTEDLER, Circuit Judges, and POWELL,* District Judge.

HUFSTEDLER, Circuit Judge:

Collins appeals from his conviction for violating 18 U.S.C. § 641 by converting to his own use $36,006 in federal funds. We reverse because the Government failed to prove that Collins converted property of the United States.

In late 1968, the Economic Opportunity Council of San Francisco ("EOC") entered into a contract with the United States Department of Labor whereby the Labor Department agreed to provide funding for certain poverty programs administered by the EOC. The Labor Department forwarded United States Treasury checks made payable to the EOC and marked for deposit in a special bank account. Under a contract between the EOC and the City and County of San Francisco ("the City"), the EOC would deposit the United States Treasury checks with the Treasurer of the City. The City Controller recorded the EOC deposits in a specific appropriation numbered 998020. The Labor Department contract required the City Treasurer to maintain a special bank account at the Chartered Bank of London, San Francisco, wherein he was to deposit the monies received from the EOC. The United States held a lien upon the credit balance in the special account superior to any lien of the Chartered Bank of London. The Labor Department contract provided that all monies deposited in the special account were public monies and that title to all property furnished by the United States would remain in the United States.

Whenever the EOC needed funds, it would prepare a warrant and forward it to the City Controller. If there were sufficient funds in the specific appropri-ation upon which the warrant was drawn to cover the amount of the requested warrant, and if the warrant was properly prepared, the Controller would sign the warrant and either return it to the EOC or forward it as instructed. The City Treasurer is obligated to cash a proper warrant as a bank is obligated to cash a check.

On about February 5, 1969, the City Controller forwarded to the EOC a warrant in the amount of $36,006 payable to CEP Intensive Training Unit. The Controller charged the warrant against appropriation 998020, the account of the Labor Department funds.

The EOC operated the Intensive Training Unit as part of the Labor Department contract under the EOC's Concentrated Employment Program ("CEP"), but the Unit was not authorized to receive City warrants. The warrant was placed in the CEP Intensive Training Unit file. On April 10, 1969, the warrant disappeared from the EOC files.

Prior to April 22, 1969, Collins opened an account in the Haight-Belvedere Branch of the United California Bank ("UCB") for a nonprofit corporation named the Community Resources Pool Intensive Training Unit. He later returned to the bank with signature cards for the corporation's account. He was accompanied by Jeanette Rocquemore who was using the name Sylvia Ross. Ross' and Collins' names were on the signature cards. On April 22, 1969, Ross returned to the Haight-Belvedere Branch with the missing warrant. She deposited the warrant in the Community Resources Pool account. At no time did the CEP Intensive Training Unit receive or endorse the warrant.

Thereafter, a series of checks drawn by Collins and Ross on the Community Resources Pool Intensive Training Unit account were cashed by various individuals. Two checks totaling $5457.60 were used by Collins and Ross to buy two

---

* Honorable Charles L. Powell, Chief Judge, United States District Court for the East-ern District of Washington, sitting by designation.

cashier's checks in the same amount from the UCB's Haight-Belvedere Branch. One of the cashier's checks was cashed at the First Western Bank while the other was cashed at UCB's branch at Van Ness and Clay Streets. Another check for $230 was used to purchase a typewriter. The remaining checks were cashed at the UCB Haight-Belvedere Branch. The total of all checks cashed approximated $26,000.

The district court decided as a matter of law that (1) under the contractual scheme, the United States retained title to the funds transferred to the EOC for deposit with the City Treasurer and in the Chartered Bank special account, and (2) any funds obtained by Collins' forging the endorsement on the otherwise valid warrant were likewise the property of the Government. The district court erred in deciding the second issue. It is unnecessary to decide whether it correctly resolved the first.

■■ There is no legal predicate for holding that the UCB paid the Government's money to Collins. When a bank pays a draft bearing a forged endorsement, it expends its own money rather than that of its depositor. The Government's money in legal contemplation remains in its account. The proceeds of a warrant negotiated by a thief are the property of whomever he may have convinced to make payment thereon. (Cf. Pina v. United States (9th Cir. 1948) 165 F.2d 890; UCC art. 4, § 401.)

Unlike the case of United States v. Lee (9th Cir. 1972) 454 F.2d 190, upon which the dissent relies, the warrant, the actual piece of paper, did not belong to the Government. All of the evidence was that it was a standard warrant of the City and County of San Francisco. The usual check theft case involves three parties: the drawer, the thief, and the person who accepts the forged check. When the drawer is the Government, it is the Government's piece of paper and the thief has stolen the property of the Government and of the person he has convinced to make payment. (See Clark v. United States (6th Cir. 1920) 268 F.

329.) In the present case, four parties are involved: The Government, the City Treasurer, the thief, and the bank which made payment on the forged endorsement. Even if we assume that the Government owned the money against which the warrant was drawn, the piece of paper Collins stole belonged to the City and the money to the bank; nothing he took belonged to the Government.

■■ It is an essential element of the crime of stealing Government property in violation of 18 U.S.C. § 641 that the Government have suffered an actual property loss. (United States v. Johnston (1924) 268 U.S. 220, 226–227, 45 S.Ct. 496, 69 L.Ed. 925; United States v. Alessio (1st Cir. 1971) 439 F.2d 803.) The fact that Collins committed some crime cannot obscure the failure of the Government to prove that he committed the crime with which he was charged. (Cf. Prussian v. United States (1931) 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610.)

The judgment is reversed.

POWELL, District Judge (dissenting):

I respectfully dissent.

Early in the trial the district judge pointed out that the character of the funds disbursed under the poverty contracts was a question of law (RT 100). At the close of the case the trial judge determined from the evidence as a matter of law that if the money was deposited in the City Treasurer's account number 998020, it was the property of the United States (RT 834–35). And that the proceeds of a warrant issued on this account remained the property of the United States (RT 835–36).

Recent cases support this decision by the trial judge. United States v. Alessio, 439 F.2d 803, 804 (1st Cir. 1971); United States v. Jackson, 436 F.2d 39, 41 (9th Cir. 1970), cert. denied, 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682 (1971); Brown v. United States, 334 F.2d 488, 491–492, 497–501 (9th Cir. 1964) (concurring opinion), aff'd on other

grounds, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965). The issue as to whether federal funds were actually deposited in account number 998020 was properly left to the jury (RT 844).

The majority opinion fails to recognize the crime was completed when the warrant was deposited in the UCB. For the purposes of this statute and the criminal law, conversion of a negotiable instrument, such as a warrant, presumably constitutes a conversion of the face value of the instrument. United States v. Lee, 454 F.2d 190 (9th Cir. 1972). See 52A C.J.S. Larceny § 60(2) b, at p. 491 (1968). See also Restatement (Second) of Torts § 242, and comment *c* (1966); U.C.C. § 3–419.

At further issue is the character of the proceeds of the warrant. No one has asserted that, as the majority states, UCB has paid the Government's money to Collins. But Collins exercised his dominion over the funds, the proceeds of the warrant, when the UCB account was opened and the EOC lost control of the warrant and its proceeds. That act constituted an appropriation to a use inconsistent with the owner's rights. See Ailsworth v. United States, 448 F.2d 439, 442 (9th Cir. 1971); Pina v. United States, 165 F.2d 890, 893–894 (9th Cir. 1948). Cf. Crabb v. Zerbst, 99 F.2d 562 (5th Cir. 1938).

Upon negotiating the warrant, the defendant converted property of the United States. This the statute seeks to prevent. The intermediate banking steps necessary before account 998020 was debited are irrelevant. If the view of the majority opinion is adopted, conversion of Government funds would never lie on a three-party instrument where the drawee is not itself a Government agency.

Review of the record supports the conclusion of the trial judge that it was beyond dispute that if funds were placed in the City Treasurer's account, that the warrant and its proceeds belonged to the United States. The jury found that funds were so placed.

I would affirm.