**UNITED STATES of America**

v.

**Terry Nora EDWARDS, James Henley.**

**Crim. No. CR 79–124–N.**

United States District Court,
D. Massachusetts.

June 1, 1979.

John W. Laymon, Asst. U. S. Atty., Boston, Mass., for Government.

Melvin Norris, Harvey F. Rowe, Jr., Boston, Mass., for defendants.

OPINION

NELSON, District Judge.

The defendant, Terry Nora Edwards, has filed a Motion for Reconsideration of Defendant's Motion for Judgment of Acquittal and a Motion for Reconsideration of Defendant's Motion for a New Trial. She asserts that the check which she was convicted of concealing and retaining with intent to convert to her own use was not the property of the United States, as alleged in the indictment, when it came into the hands of one of the defendants. Ms. Edwards asserts that for this reason the judgments on all counts are invalid. The Court has considered the defendant's arguments, and concludes that the check in question was a "thing of value of the United States" under 18 U.S.C. § 641, and that the judgments are valid.

There can be no question that if the check were stolen directly from the United States Government before it was entrusted to the mails, an indictment under 18 U.S.C. § 641 would be proper. The statute addresses conversion or retention with intent to convert of "any record, voucher, money or thing of value of the United States." The statute has been held to include checks made by the United States. *See Clark v. United States,* 268 F. 329, 333 (6th Cir. 1920). In that case, theft occurring before delivery to the payee brought the statute into play. The question in this case is whether theft occurring after the check is mailed is theft of a thing of value of the United States.

The defendant asserts that upon mailing, a United States check is no longer the prop-

erty of the United States but becomes the property of the payee. The defendant cites 11 Am. Jur. 2d, *Bills & Notes,* Sec. 277, which equates mailing with delivery. An examination of the cases cited in that section indicates that this rule refers to such matters as the payee's right to sue upon the note, or the place of execution of the note for conflict of law purposes. *See, e. g., In re Lucas' Estate,* 272 Mich. 1, 261 N.W. 117 (1925); *Trego v. Cunningham's Estate,* 267 Ill. 367, 108 N.E. 350 (1915); *Barrett v. Dodge,* 16 R.I. 740, 19 A. 530 (1890). We may assume, then, that the payee has a property interest in the check by virtue of its delivery upon mailing. This does not, however, preclude the United States from having an interest in the check as well. Various property interests may exist in any one thing at any one time. What must be determined is not whether the payee had acquired an interest in the instrument at the time of the theft, but whether the United States had lost all significant interest in the instrument by that time.

It is evident that the United States was not discharged of its obligation to pay the payee of the check the face amount of the check upon placing it in the mails. The mailing of the check would not be a defense to an action by the payee either on the underlying obligation or on the instrument itself. Suit could be brought on the underlying obligation pursuant to 26 U.S.C. § 7422 (civil actions for refund). It is true that an underlying obligation is suspended until presentment of a demand instrument, if the instrument is "taken" for the underlying obligation. UCC § 3–802. Yet I have found no case law to suggest that the concepts of "taking" and "delivery" are the same. To "take" something suggests some greater activity on the part of the taker. If this view is correct, and mailing the check by the maker does not constitute taking by the payee, then the underlying obligation is not. suspended. Even if the payee did "take" the instrument for the underlying obligation, the suspension is only temporary. "If the instrument is dishonored action may be maintained on either the instrument or the obligation. . . . "

UCC § 3–802(1)(b). "An instrument is dishonored when . . . (b) presentment is excused and the instrument is not duly accepted or paid." UCC § 3–507. "Presentment . . . is entirely excused when (c) by reasonable diligence the presentment . . . cannot be made." UCC § 3–511(2). The instrument is not duly accepted or paid when a thief/forger receives payment, since he is not a holder. *See* UCC §§ 1–201, 3–603. Accordingly, the underlying obligation is not discharged upon mailing the check. Nor is the obligation on the instrument itself extinguished upon mailing. The payee could sue on the instrument under UCC § 3–804 upon proof of his ownership, the facts which prevent his production of the instrument, and its terms.

Since mailing the check does not relieve the government of either the underlying obligation or liability on the instrument itself, the United States continues to bear the risk of loss even after mailing. As long as the United States bears the risk of loss, the United States must be deemed to have a property interest in the note. "[A]n essential element of the offense defined by [Sec. 641] is 'that the Government have suffered an actual property loss.'" *United States v. Miller,* 520 F.2d 1208, 1210 (9th Cir. 1975) *quoting United States v. Collins,* 464 F.2d 1163, 1165 (9th Cir. 1972). Indeed, the position of the United States Government with respect to the risk of loss is essentially the same here as in *Clark v. United States,* 268 F. 329 (6th Cir. 1920), where the instrument was stolen before delivery. In either case the Government must make payment despite the theft. In both cases, therefore, the United States has a property interest in the instrument.

This conclusion is not altered by virtue of any rights the United States Treasury may have against the bank that "cashes" the check. True, the Treasury could ultimately recover from the Bank any amount charged to the Treasury in payment of a check bearing a forged endorsement, *see* UCC § 4–401, provided that no negligence of the United States substantially contributed to the forgery, *see* UCC § 3–406. It is not entirely apparent, however, that the

Government would be free of contributing negligence where a check is stolen from the United States mails. And even where the Bank must ultimately bear the loss, there is still some loss to the Government. First, there is the loss of the check itself; then there may be a temporary loss of Treasury funds; and finally, losses may be incurred in the efforts to have the Bank restore the funds. The United States has enough at stake, then, when it sends a check through the mails to warrant the conclusion that it has a property interest in that check.

Not only does this view appear correct in theory, but it has the direct support of case law from other circuits. A conviction was sustained under § 641 upon facts very similar to those presented by this case in *United States v. Lee,* 454 F.2d 190 (9th Cir. 1972). There the defendant had stolen a United States Treasury check from a mailbox. In affirming the conviction, the Court did not specifically address the question of the federal nature of the check. The Ninth Circuit later, however, distinguished *United States v. Lee* from another case presented to it on the ground that the check in *Lee* was property of the Government. *United States v. Collins,* 464 F.2d 1163, 1165 (9th Cir. 1972). *Collins* involved a warrant belonging to the City of San Francisco, a fact which adequately distinguished it from the instrument in *Lee. Collins,* 464 F.2d at 1165. The Court, in *Collins,* explained that "[w]hen the drawer is the Government, it is the Government's piece of paper and the thief has stolen the property of the Government and of the person he has convinced to make payment." *Id.*

The view that a check from the United States remains a thing of value of the United States after mailing is supported also by *United States v. Miller,* 520 F.2d 1208 (9th Cir. 1975). There defendant, the director of a private, non-profit health planning organization, cashed a grant check which the United States had issued through clerical error and deposited a portion of the proceeds in his own account. The Court said that there were two theories upon which the conviction under § 641 could be sustained: first, the check itself was a thing of value of the United States, regardless of whether the funds had passed from the federal government to the organization, and second, since the check was erroneously issued, the property right in the check never passed from the United States. *Id.* at 1210. The first theory would, of course, support the conviction in this case.

The authorities discussed above support the conclusion that a United States Treasury check removed from the mails is a "thing of value of the United States" for purposes of 18 U.S.C. § 641. It is apparent, also, that the value of the property exceeds $100, permitting a sentence of imprisonment for more than one year under 18 U.S.C. § 641. The section provides that "[t]he word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater." In *United States v. Lee,* 454 F.2d 190 (9th Cir. 1972) the value was held to be the face amount of the check. *Id.* at 192. The opinion quoted 52A C.J.S. *Larceny* § 60(2)b at 491 as follows:

> In a prosecution for the theft of evidence of debt, such as . . . checks . . . the value of the instrument is measured according to the standard set up in the statute. Thus, under particular statutory provisions, the value is deemed to be the money due on the instrument. . . .

*Lee,* 454 F.2d at 192.

For the reasons given above, the defendant's motions are denied.