**UNITED STATES of America, Appellee,**

v.

**Marvina C. BENEFIELD, Appellant.**

**No. 82–5175.**

United States Court of Appeals,
Fourth Circuit.

Submitted Feb. 11, 1983.

Decided Nov. 8, 1983.

Paul Lyne Delaney, Alexandria, Va., for appellant.

Elsie L. Munsell, Alexandria, Va., (Linda S. Chapman, Amarillo, Tex., on brief), for appellee.

Before WIDENER and SPROUSE, Circuit Judges, and FAIRCHILD,* Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

A complaint charged Mrs. Benefield with embezzling property of the United States, a violation of 18 U.S.C. § 641. The complaint described the property as checks for $80 and $212, and alleged the value did not exceed $100, the dividing line between misdemeanor and felony under the statute. Defendant elected to be tried by a Magistrate, who found her guilty and imposed a fine. On appeal, the district court affirmed. Defendant appealed to this court.[1]

Mrs. Benefield was cashier at the Non-Commissioned Officer's Club, owned by the United States, at Fort Belvoir, Virginia. In that capacity she was in charge of arrangements for a party given by a Mrs. Vancil. When it was time to make payment, defendant directed Mrs. Vancil to write four checks, leaving the payee blank. Checks for $1,801.70 and $375 were stamped with the appropriate payee and properly deposited in the Club's account (except that there was a $100 overcharge in the $375 item). Defendant inserted her own name as payee

---

* Honorable Thomas E. Fairchild, Senior Circuit Judge for the Seventh Circuit Court of Appeals, sitting by designation.

1. The defendant makes no point of the fact that the checks were cashed at face value, exceeding $100.

in checks for $80 and $212 and cashed them, keeping the proceeds.

Mrs. Vancil testified that she thought the $80 check was for wine and other incidentals, but was unsure. Defendant testified it was reimbursement for a centerpiece defendant personally paid for, although she had made a prior inconsistent statement.

Mrs. Vancil testified that the $212 was for gratuities for the entire staff, but defendant testified the tip was all for her. Whatever the truth as to entitlement to the $80, there was ample proof to support the finding that the $212 was a tip for all the employees who worked at the party, and not for defendant alone. Defendant cannot succeed in attacking that finding on appeal.

Defendant does argue that as a matter of law tip money intended for distribution to individual employees was not "any ... money, or thing of value of the United States or of any department or agency thereof" as prescribed in 18 U.S.C. § 641.

The Club operates under rules and regulations promulgated by the Department of the Army. Army Regulation 230–9 (May 21, 1975) (hereinafter AR 230–9) establishes procedures for handling non-appropriated funds received by installations such as the Club. It requires accounting for any funds received. AR 230–9 ¶ 10a, e. It also requires each installation to establish a system of internal controls. *Id.* ¶ 6a, c.

While AR 230–9 does not specifically mention tips received for distribution to employees, the Club had established an unwritten standard operating procedure for the receipt of all funds including tips for distribution to employees. Under the procedure the cashier would deposit such tips in the Club bank account maintained by the federal government and report them to central accounting with a list of employees who worked the party which occasioned the tip. Employees would receive their share in their payroll checks subject to tax withholding. The defendant knew the standard collection and accounting procedures for such tips.

In determining whether an interest qualifies as "any ... money, or thing of value of the United States" under 18 U.S.C. § 641, courts have identified as critical factors the basic philosophy of ownership reflected in relevant statutes and regulations and the supervision and control contemplated and manifested by the government. *United States v. Evans,* 572 F.2d 455, 472 (5th Cir.1978), *cert. denied sub nom. Gent v. United States,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). *See United States v. Perez,* 707 F.2d 359, 361 (8th Cir.1983); *United States v. Gibbs,* 704 F.2d 464, 466 (9th Cir.1983); *United States v. Eden,* 659 F.2d 1376, 1380 (9th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982); *United States v. Mitchell,* 625 F.2d 158, 160 (7th Cir.1980), *cert. denied,* 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980); *Arbuckle v. United States,* 146 F.2d 657, 659 (D.C.Cir.1944).[2]

2. In the following cases courts have held the government's interest insufficient under § 641 and its predecessors.

*United States v. Johnston,* 268 U.S. 220, 226–27, 45 S.Ct. 496, 496–497, 69 L.Ed. 925 (1925) (a fight promoter retained federal taxes upon admission fees for boxing matches, but a treasury regulation designated the money non-government property until paid to the government, nothing required segregation of the tax from other receipts, and the tax statute required only monthly reports).

*United States v. Mason,* 218 U.S. 517, 31 S.Ct. 28, 54 L.Ed. 1133 (1910) (a clerk of a United States District Court retained fees and emoluments amounting to more than the authorized compensation and allowances but the statute defining the clerk's rights and duties made him a debtor rather than a trustee with respect to the surplus fees and emoluments).

*United States v. Morris,* 541 F.2d 153 (6th Cir.1976) (an employee of a partially federally funded community action program, which had both a government contract to provide food for needy children and a private contract to provide lunches for non-needy children, retained a check payable to the program for lunches provided under the private contract).

*United States v. Owen,* 536 F.2d 340 (10th Cir.1976) (an urban renewal agency had expended all its federal funds before the defendant embezzled its proceeds from private loans guaranteed by the United States).

*United States v. Yokum,* 417 F.2d 253, 255 (4th Cir.1969), *cert. denied,* 397 U.S. 907, 90 S.Ct. 902, 25 L.Ed.2d 87 (1970) (the federal government received due payment and passed

AR 230–9 contemplates and manifests federal supervision and control over funds given to Army employees in the course of their employment by requiring accounting procedures and ultimate disbursal to the entitled persons. The standard operating procedure implements the regulation by requiring temporary federal possession of tips intended for distribution to Club staff and the recording of such tips for income tax purposes. The regulation and operating procedure make this case similar to those holding the government's right to temporary possession a sufficient federal interest under § 641 and its predecessors. *Perez,* 707 F.2d at 362 (fifteen one-hundred dollar bills the government held and intended to use as evidence at trial); *Fowler v. United States,* 273 F. 15, 17 (9th Cir.1921) (freight shipped on government operated railroad); *Kambeitz v. United States,* 262 F. 378, 380 (2d Cir.1919) (same); *United States v. Gardner,* 42 F. 829, 832 (C.C.N.D.N.Y.1890) (smuggled goods held by customs official).[3] Under the circumstances the tip money was a "thing of value of the United States" until disbursed to the entitled employees through the established procedure.

The defendant argues that the government suffered no loss because ultimately it would have disbursed the tip money to the employees. Some courts have listed as elements of a valid § 641 conviction both a taking of a thing of value of the United States and a loss suffered by the United States due to the taking. *See Gibbs,* 704 F.2d at 465 (citing *United States v. Collins,* 464 F.2d 1163, 1165 (9th Cir.1972)). *See also Evans,* 572 F.2d at 471. No case required the kind of loss for which the defendant contends. The cases mentioning loss as an element did not involve funds collected to be held in a government account for the benefit of a non-governmental party.

Only *Collins* reversed for lack of "an actual property loss." The facts of *Collins* distinguish it from the present case. In *Collins* the defendant forged an endorsement on a city treasurer's warrant written against a special account funded by the United States Department of Labor, deposited the warrant in his bank account, and wrote checks against the fraudulent deposit. The Ninth Circuit emphasized that the bank, not the federal government, would be liable for paying on a draft bearing a false endorsement. The court stated that "[t]he Government's money in legal contemplation remains in the account," and therefore "nothing [the defendant] took belonged to the Government." *Id.*

Other courts have rejected the technical "legal contemplation" analysis of *Collins. Mitchell,* 625 F.2d at 161; *United States v. Maxwell,* 588 F.2d 568, 573 (7th Cir.1978).

Even assuming that § 641 requires a loss to the government, other decisions support the proposition that the diversion of the tip

---

**3.** The government cites *Loewe v. United States,* 135 F.2d 622 (9th Cir.1943). Loewe was convicted of charges under both a predecessor of § 641 (former 18 U.S.C. § 100) and also a predecessor of 18 U.S.C. § 654 (former 18 U.S.C. § 183, Act of March 4, 1909, ch. 321, § 97, 35 Stat. 1106). Section 654 covers any money or property which comes into possession or control in the execution of the embezzler's federal employment.

Loewe, an employee of the United States Indian Service, embezzled two types of payments: payments due the United States Reclamation Service for the irrigation of Indian lands, and payments for rentals of Indian lands, which the United States was to receive, hold temporarily, and ultimately disburse to the Indians. The court said, "The funds received as irrigation charges were obviously the property of the United States. The rentals, likewise, were received and held by the United States as guardian and trustee for its Indian wards. There is no doubt that the charges laid and proved were within the provisions of the statutes mentioned."

We read *Loewe* as holding that the rental payments as well as the irrigation charges were property of the United States. Although the first sentence quoted may give rise to a degree of ambiguity, the court did not limit its affirmance of the § 641 conviction to the funds received as irrigation charges.

to the state title to a truck which subsequently the defendant acquired wrongfully).

money from the government's account and the accompanying disruption of its record-keeping and tax withholding meets the requirement. *See Mitchell,* 625 F.2d at 162; *United States v. Forcellati,* 610 F.2d 25, 31 (1st Cir.1979), *cert. denied,* 445 U.S. 944, 100 S.Ct. 1342, 63 L.Ed.2d 778 (1980); *United States v. Miller,* 520 F.2d 1208, 1210 (9th Cir.1975). In addition, unlike in *Collins,* here the government may face fiduciary liability to the ultimate beneficiaries of the tip for the illegal actions of its agent Mrs. Benefield.

Accordingly, the judgment is AFFIRMED.