[Civ. No. 12100. Second Appellate District, Division Two.—December 29, 1939.]

PACIFIC INDEMNITY COMPANY (a Corporation), Respondent, v. RICHARD L. HARGREAVES, Appellant.

George Edward Acret for Appellant.

Charles E. R. Fulcher for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff after trial before the court without a jury in an action to recover a sum of money paid by plaintiff as principal on a fidelity bond after defendant defaulted, defendant appeals.

The essential facts are:

January 29, 1931, defendant, president of the First National Bank of Beverly Hills, was indebted to the Chase National Bank in the sum of approximately $280,000. He was also indebted to the First National Bank of Beverly Hills in the sum of approximately $40,000. On the aforementioned date defendant communicated with Mr. C. R. Bell, vice-president of the Bank of America, and asked him for an unsecured loan in the sum of $60,000. Mr. Bell told defendant that he would take care of it. However, thereafter Mr. Bell informed defendant that he could only loan him $48,000, whereupon defendant asked how he was to raise the $12,000 more which he needed. Mr. Bell suggested that he borrow it from his own bank, but was informed by defendant that he did not care to increase his liability with his own bank, whereupon Mr. Bell stated that he would have Mr. Ben H. Brown, one of the vice-presidents of the Bank of America, borrow $12,000 from the bank of which defendant was president, as an accommodation to defendant.

A note was then drawn in favor of the First National Bank of Beverly Hills in the sum of $12,000 signed by Mr. Brown, who received a cashier's check for $12,000 which he endorsed to defendant, who gave his unsecured note to the Bank of America for $48,000, receiving a credit slip for this sum and the $12,000 cashier's check endorsed by Mr. Brown. These defendant deposited to his credit in the First National Bank of Beverly Hills, and thereafter he gave to the Bank of America a draft for sixty-one thousand and some odd dollars, which sum in turn was by the Bank of America transmitted to the Chase National Bank. On the same day defendant executed a guarantee to the First National Bank of Beverly Hills of the $12,000 note signed by Mr. Brown. However, the contingent liability register of the bank did not,

as was customary, show that the note executed by Mr. Brown was guaranteed by defendant until August 7, 1931. Shortly after the execution of the note by Mr. Brown the loan was approved by the loan committee and the board of directors of the First National Bank of Beverly Hills. Although the other directors were not aware of the fact, Mr. Scantlin, a loan officer of the bank and a director thereof, knew before the loan was approved that defendant was receiving the proceeds thereof.

April 15, 1932, the note was "charged off", which in bank parlance means that the note is taken out of the current or active assets of the bank which make up the actual assets shown on the bank's balance sheet, for the reason that the note was not of sufficient worth to justify its being included as part of the bank's assets.

June 3, 1932, the First National Bank of Beverly Hills was closed and a receiver was appointed for the purpose of handling its affairs.

August 12, 1932, defendant filed a petition in bankruptcy, and in his schedule of liabilities he included the note executed by Mr. Brown, payable to the First National Bank of Beverly Hills, as accommodation paper endorsed by him. February 6, 1933, he was duly discharged from bankruptcy.

June 15, 1933, Mr. Brown filed a petition in bankruptcy and was thereafter duly discharged. April 12, 1934, defendant was convicted in the United States District Court for misapplication of funds while president of the First National Bank of Beverly Hills. Among the transactions involved was the one relative to the $12,000 note executed by Mr. Brown. His conviction was affirmed by the United States Circuit Court of Appeals (*Hargreaves* v. *United States*, 75 Fed. (2d) 68), and his petition in *certiorari* was denied by the Supreme Court of the United States (295 U. S. 759 [55 Sup. Ct. 920, 79 L. Ed. 1701]).

March 1, 1934, the receiver of the First National Bank of Beverly Hills filed an action against the plaintiff herein on a fidelity bond, which the latter had executed covering defalcations by employees of the bank, to recover the sum of $12,000 which the bank had lost on the note executed by Mr. Brown. Thereafter plaintiff effected a settlement of the claim with the receiver for the bank by paying him $9,000.

Defendant relies for reversal of the judgment on these propositions:

*First: The trial court's findings of fact are not supported by the evidence.*

*Second: The trial court did not make a finding as to when the bank learned of the loss.*

*Third: The findings of fact do not support the judgment in the following particulars:*

*(a) They do not establish that plaintiff paid any loss under legal compulsion.*

*(b) They do not show compliance with the condition precedent required in the bond, to wit, the filing of proof of loss within ninety days and the commencement of suit against the surety within one year of discovery of the loss by the bank or by any person capable of charging the bank with knowledge of such loss.*

*(c) They do not establish that the defendant committed any dishonest or criminal act.*

*Fourth: The trial court committed prejudicial error in admitting in evidence the judgment of defendant's conviction by the federal courts in a criminal case pertaining to the transaction herein involved.*

 The first proposition is untenable. An examination of the record discloses substantial evidence in connection with the inferences which may be reasonably drawn therefrom to sustain the facts set forth above and each and every finding of fact made by the trial court upon which the judgment in favor of plaintiff is necessarily predicated. For example:

(a) The trial court found as follows:

"That on or about October 25, 1933, the plaintiff delivered to the defendant, through his agent and attorney, William H. Neblett, a true and correct copy of said itemized proof of claim, and the said defendant nor his attorney at any time raised or asserted any claim or offered any information or proof that the aforementioned discovery was not made as set forth and alleged in said itemized proof of claim."

Paragraph 2 of the second amendment to the complaint contained an allegation identical with the finding just recited. This allegation was not denied and therefore was admitted.

(b) The trial court found in substance that neither defendant nor Mr. Brown was of sufficient financial responsibility to justify the $12,000 loan to Mr. Brown by the First National Bank of Beverly Hills. Defendant testified that at the time he went to see Mr. Bell, ''I had no idea when I went down to see Mr. Bell where I was going to get the money''. Mr. Brown testified that when defendant was on trial in the federal court he, Mr. Brown, had testified as to his financial responsibility at the time of the loan as follows: ''It is a question of whether I was worth it unsecured.'' These statements, coupled with the fact that defendant and Mr. Brown were both subsequently adjudicated bankrupts, gives ample support to the trial court's findings of the facts just mentioned. Further discussion of the evidence is unnecessary.

▉ Defendant's second proposition is also untenable. Finding V of the trial court reads in part as follows:

''That on or about the 10th day of October, 1933, the said Receiver of First National Bank of Beverly Hills *first learned* of the loss claimed under said bonds, and within ninety (90) days therefrom, to-wit, on the 17th day of October, 1933, made, executed and duly swore to an itemized proof of claim, a copy of which is attached to the second amendment to complaint, marked Exhibit 'A', . . . '' (Italics added.)

The finding that on or about the 10th day of October, 1933, the said receiver of the First National Bank of Beverly Hills *first* learned of the loss claimed, etc., is clearly a finding as to when the bank learned of the loss.

▉ Defendant's third proposition is likewise without merit.

(a) If a surety satisfies the principal obligation without legal proceedings the principal is bound to reimburse the surety for what he has disbursed. (Civ. Code, sec. 2847.) It was therefore unnecessary for plaintiff to wait until the receiver had obtained a judgment against it before paying the claim upon which the receiver's suit was based.

▉ (b) Finding number V, supported by substantial evidence as is heretofore pointed out, expressly found that the receiver of the First National Bank of Beverly Hills *first* learned of the loss on October 17, 1933, and that within ninety days thereafter a sworn proof of loss was filed with

the plaintiff. It is uncontradicted that on March 1, 1934, the receiver filed an action against plaintiff to recover according to the terms of the fidelity bond. Hence plaintiff did not have a valid defense against the claim of the receiver predicated upon the theory that the claim had not been filed within ninety days after discovery of the loss nor suit commenced within one year after such discovery, as required in the fidelity bond.

(c) An officer of a bank who knowingly, through another person and without disclosing the fact, makes loans for his own private gain is guilty of misapplication of such funds. (*Hargreaves* v. *United States*, 75 Fed. (2d) 68, 72.) The bond in the instant case covered ''any loss through any dishonest or criminal act of any of the employees, including loss of property through any act of any of the employees wherever any such act may be committed, and whether committed directly or by collusion with others''. It is dishonest for the president of a bank to secretly obtain its funds by putting forth others as worthy of credit while concealing from the bank his interest in the transaction. Likewise insurance against dishonest acts is insurance of fidelity. It is intended to and does guarantee openness and fair dealing on the part of the bank's officials with the bank. (*Maryland Casualty Co.* v. *American Trust Co.*, 71 Fed. (2d) 137, 138; *Fidelity & Deposit Co. of Maryland* v. *Bates*, 76 Fed. (2d) 160, 166.)

In the instant case the acts of the defendant fell clearly within the provisions of the bond insuring against dishonest acts, as defined by the authorities above cited. Defendant without the knowledge of his directors borrowed money from the bank, of which he was president, by a subterfuge, the evidence thoroughly justifying the inference that he knew he was not in a position to repay the loan and that Mr. Brown had no intention to pay it for him. Under these facts defendant's conduct did not measure up to the *mores* in this community or in any other banking community of the United States. He occupied a position of trust and confidence which he secretly betrayed. His acts certainly did not comport with common honesty, as understood by the ordinary business men in this community.

Defendant's final proposition is likewise untenable. Section 2051 of the Code of Civil Procedure reads as follows:

"A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, *or the record of the judgment, that he had been convicted of a felony.*" (Italics added.)

Clearly under the foregoing rule of law the record of the judgment that defendant had been convicted of a felony was admissible in evidence, in view of the fact that defendant was called as a witness and testified. It being admissible for the purpose of impeaching the witness, it will be presumed in this court, in the absence of a showing to the contrary (which there is not in the instant case), that the trial court considered such evidence for a proper purpose only, to wit, that of impeaching the testimony of the witness.

In view of the foregoing, it is evident that defendant's liability to plaintiff was predicated upon fraud and defalcation while acting as an officer in a fiduciary capacity. Therefore, under subsection 4, section 35, United States Code Annotated (11 U. S. C. A., 1927, sec. 35), he was not relieved from his liability by his discharge from bankruptcy, since the obligation was, as heretofore pointed out, founded upon fraud and defalcation while acting as an officer in a fiduciary capacity.

For the foregoing reasons the judgment is affirmed.

Moore, P. J., and Wood, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 26, 1940.