## MEEKS v. UNITED STATES.
### No. 11293.

Circuit Court of Appeals, Ninth Circuit.
Sept. 12, 1947.

William L. Paul, Jr., and M. G. Monagle, both of Juneau, Alaska, for appellant.

P. J. Gilmore, Jr., U. S. Atty., and Robert Boochever, Asst. U. S. Atty., both of Juneau, Alaska, for appellee.

Ewart L. Merica and Stanley Walsh, both of San Francisco, Cal., amicus curiae.

Before DENMAN, STEPHENS and ORR, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment sentencing appellant to life imprisonment on a charge of murder in the first degree. One Campbell was found dead in a ditch in Juneau, Alaska. His throat had been cut and some $2,000, principally in $100 bills, taken from him. Appellant was indicted, tried, convicted and sentenced. On the questions hereafter discussed, we are indebted to Professors Merica and Walsh, amici curiae, for their able brief on behalf of appellant.

One of the principal witnesses for the plaintiff government and the only one giving direct testimony of premeditation was Kelso B. Hartness. Hartness testified that appellant told him the day before Campbell was killed that he had spent all his money and would have to borrow to pay for his meals; that there was a "big shot" in town with a lot of money in $100 bills and he proposed to Hartness that they, Hartness and appellant, should knock him on the head and take the money. Hartness testified that he said to appellant that he was not interested and appellant replied he had another person in mind.

Hartness further testified that on the night of the day Campbell was killed, appellant came into Hartness' room where, in his presence and that of his girl friend, Lena Brown, appellant displayed a bill fold with $100 and $50 bills in it. Hartness also testified that later appellant displayed to him a blood stained shirt and borrowed one of Hartness' shirts and put it on after tearing up the blood stained one and flushing it down the toilet. Appellant requested of Hartness and Lena Brown to say nothing about the money he had and of Hartness that he say nothing of the destruction of the shirt. The government failed to produce Lena Brown to corroborate Hartness' testimony.

Hartness further testified that on the next day appellant came to him and asked him to write two letters for appellant, who is an illiterate. Appellant dictated the letters, which Hartness wrote. One was to contain money for the addressee, Dora Paul. The other was written to one Eddie Schwaesdell, stating that the F.B.I. "are really after me" and requesting of Eddie "If the F.B.I. ask you, you never seen me with any money." These letters were introduced in evidence on Hartness' identification.

■ It is apparent, that though the jury may have doubted the veracity or accuracy of memory of the other witnesses and not been convinced beyond a reasonable doubt that appellant had committed first degree murder, Hartness' testimony, without any other evidence than of the corpus delicti and Campbell's possession of the $100 bills when last seen alive, would have been sufficient for a verdict of guilty.

Hartness had been convicted of the crime of forgery and uttering a forged instrument and his sentence to two years in McNeil Island penitentiary on its face provided for his release on probation, to continue if he performed certain conditions hereafter discussed. It was while the plaintiff government had so released him on probation that he testified.

The defendant offered in evidence and the judge denied admission of the court record of the sentence. Defendant's offer was stated to be made for two purposes (a) as part of cross-examination of Hartness to show a possible bias and (b) as a direct impeachment arising from the conviction itself, as provided by the Compiled Laws of Alaska 1933.

■ (a) It is difficult to imagine a more direct and intimate relationship likely to affect one's testimony than that between the plaintiff government and its most important witness in establishing this first degree murder. Only by following the stated and other conditions of the parole would the plaintiff permit the witness to

remain out of the penitentiary. The stated conditions were "that he shall immediately obtain steady employment; that he shall regularly contribute to the support and care of his mother; that he shall report at least once a month in person or by letter to the United States Marshal at Juneau; and further, that the United States Marshal at Juneau is hereby designated as the probation officer and directed to exercise supervision and control over the conduct of the defendant Hartness; and further, that upon the noncompliance by the defendant Hartness with any of the conditions or any reasonable order or regulation of the probation officer, the probation officer shall cause the defendant to be arrested and brought before the Court."

Such a witness, who testified to such intimate relations with one proposing they join in a murder and who so claimed to have aided defendant, well could imagine that favorable testimony would procure a kindly and favorable consideration of the borderline questions which might terminate his parole. Such questions were of his "steady employment," or of the *amount* he should "contribute to the support and care of his mother;" or of what *frequency* he should make the payments; or of his excuses for not reporting in person or by letter on exact *monthly* intervals; or what constituted a "reasonable order or regulation" of his conduct by the United States Marshal. Unfavorable decision in any of these well could cause the plaintiff's Marshal to take the plaintiff's witness to the penitentiary.

The evidence of the parole sentence was clearly admissible as a part of the defendant's sought for cross-examination of the plaintiff's witness to determine his bias or prejudice under Alford v. United States, 282 U.S. 687, 693, 51 S.Ct. 218, 75 L.Ed. 624, and Farkas v. United States, 6 Cir., 2 F.2d 644, 647. In neither of these cases was considered such a *statutory right to* introduce evidence of a prior conviction of crime as is given the defendant in Alaska. The court's refusal to admit it in evidence was substantial error, requiring a reversal of the judgment.

(b) Entirely apart from such showing of likely bias in Hartness, Section 4256 of the Alaska Compiled Laws 1933 allows the introduction of the record of a judgment of conviction of a crime as a direct *impeachment* of the witness' veracity. That section reads "A witness may be impeached by the party against whom he was called, by a contradictory evidence or by evidence that his general reputation for truth is bad, or *that his moral character is such as to render him unworthy of belief,* but not by evidence of particular wrongful acts; except that it may be shown *by the examination of the witness OR the record of the judgment* that he has been convicted of a crime." (Emphasis supplied.)

Despite the plain alternatives given to the defendant as to the method of proving "moral character * * * such as to render him unworthy of belief," the trial court repeatedly denied the admission of the record, stating at one place, typical of others, "There is only one way of asking of the conviction of a crime; by the single and sole question: Have you ever been convicted of a crime?"

Here, again, is substantial error. Apart from the usual interpretation of criminal statutes in favor of the defendant, the California statute from which the Alaska statute was derived, repeatedly has been held to permit such proof of unworthiness of belief by the introduction of the record of conviction. People v. Schenick, 1884, 65 Cal. 625, 626, 4 P. 675; People v. Soeder, 1906, 150 Cal. 12, 87 P. 1016, 1020; Pacific Indemnity Co. v. Hargreaves, 1939, 36 Cal. App.2d 338, 345, 98 P.2d 217, 221.

There is no merit to appellee's contention that the record may be offered in evidence only if the witness refuses to answer or denies the existence of the judgment. It was prejudicial error to refuse to admit such evidence of Hartness' unworthiness of belief.

(c) One of defendant's attorneys insisted that he was entitled to inquire of Hartness as to his bias or prejudice and to offer the record of the judgment sentencing him for the crime of forgery. While the jury was,

present the court pursued the following conduct:

"[Counsel to Hartness]: Have you any reason or motive for testifying other than the reason or motive of trying to the best of your ability to tell the Jury the truth of any facts within your personal knowledge?

"The Court: Don't answer that question. Proceed with your cross-examination. This is the last time I am going to warn you.

"[Counsel]: Are you sometimes known as A. S.—are you the same Hartness that was the defendant in the case entitled 'The United States against Hartness'—

"Mr. Boochever: Objection, your Honor.

"The Court: Just a moment. The court reluctantly finds you in contempt of court, on failure to apply to the order of the court made frequently, in the presence and view of the court, and it is the judgment of the court that you be fined the sum of fifty dollars and that you be removed from the prosecution of the case until the fine (be paid or the contempt purged."

■ Both questions of the attorney were obviously proper. It is elementary that the motive of a witness is a proper subject of cross-examination. The arbitrary stopping of the witness' answer without even an objection from the plaintiff was harmful misconduct calculated to prejudice defendant's standing before the jury.

■■ Still more harmful and prejudicial to defendant was the court's action before the jury in adjudging defendant's attorney in contempt for asking Hartness the incompleted sentence whether he was the Hartness who was the "defendant in the case entitled 'The United States against Harness'—" Before a judgment sentencing a person for a crime may be introduced, the identity of the witness as the defendant in the case in which the judgment was rendered properly should be established.

On the attempt to purge himself in the absence of the jury, the attorney stated his purpose to introduce the judgment when the identity of Hartness as defendant was shown. The court rejected such a statement as a purging of the contempt, stating

"The Court: There is only one way of asking of the convicting of a crime; by the single and sole question: Have you ever been convicted of a crime?

"[Counsel]: Without identifying the case?

"The Court: Yes * * *

"[Counsel]: I respectfully submit it has been frequently done, to identify to the witness the case you are referring to. In fact, some courts insist on it.

"The Court: They have never done it in Alaska. They have never been permitted to do so. There is only the one way.

"[Counsel]: I respectfully submit on the statement I made there was no intent at all to act contemptuously. I was in good faith attempting to lay a foundation to prove the witness is a convict. I request permission to continue.

"The Court: You may ask him only the one question. You will be removed from the bar of this court until the fine be paid or the contempt purged * * *"

■ The court added that the defendant could not have this attorney's aid even out of court in the search for and preparation of evidence. Appellant's remaining, attorney stated his embarrassment. The removed attorney, who had prepared himself for the cross-examination of this important witness, thus was prevented from advising the remaining attorney.

It is obvious that the average man in a jury well could conclude that the government's witness was a person highly respected by a court which, sua sponte, interrupted and refused to allow an inquiry as to the witness' bias, then refused to admit the proof of his prior conviction of a crime, followed by the shaming of appellant's attorney before the jury for an entirely proper endeavor to protect his client.[1] Such misconduct is prejudicial error.

---

1 Cf. Sprinkle v. Davis, 4 Cir., 111 F.2d 925, 930, 128 A.L.R. 1101. There the trial court's severe criticism before the jury of an attorney's conduct, where the attorney acted under mistaken but not irrational belief as to his client's rights, warranted reversal.

■■■■■ Apart from these three errors, it is true that there was other evidence strongly adverse to appellant which the jury may or may not have believed. However, the Supreme Court does not permit an appellate court to speculate as to what witnesses the jury would believe or disbelieve. Indeed, in view of the fundamental character of these errors *we may not affirm, even if we are "without doubt" of appellant's guilt.* In the recent case of Bollenbach v. United States, 326 U.S. 607, 614, 615, 66 S.Ct. 402, 406, 90 L.Ed. 350, that Court,.in reversing on an error in the trial court's instruction, stated " * * * In view of the Government's insistence that there is abundant evidence to indicate that Bollenbach was implicated in the criminal enterprise from the beginning, it may not be amiss to remind that *the question is not whether guilt may be spelt out of a record,* but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials in the federal courts. * * * From presuming too often all errors to be 'prejudicial,' the judicial pendulum need not swing to presuming all errors to be 'harmless' *if only the appellate court is left without doubt that one who claims its corrective process is, after all, guilty.* In view of the place of importance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of an accused, however justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process may be." (Emphasis supplied.)

There the reversed court of appeals found ample evidence to support the verdict. United States v. Bollenbach, 2 Cir., 147 F.2d 199, 202.

If it be true that the appellate court so could not affirm in a prosecution on the charge of transporting stolen securities in interstate commerce, a fortiori is it true of this prosecution on the charge of murder in the first degree.

Other claimed errors do not need our consideration. The judgment is reversed.