SEABOARD SURETY COMPANY,
Plaintiff, Appellant,

v.

DALE CONSTRUCTION CO. et al.,
Defendants, Appellees
(two cases).

Nos. 5028, 5064.

United States Court of Appeals
First Circuit.

March 6, 1956.

Rehearing Denied in No. 5064.
March 22, 1956.

Stuart Macmillan, Boston, Mass., Samuel F. Clapp, Boston, Mass., on the brief, for appellant.

Edward H. Appelstein, Boston, Mass., for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

The plaintiff-appellant, Seaboard Surety Company, a New York corporation, brought suit in the court below under its diversity jurisdiction against Dale Construction Co., a Massachusetts corporation, and its two principal officers, both citizens of Massachusetts. The suit was for specific performance of two identical contracts of indemnity executed by Dale and its officers individually in consideration of the issuance by Seaboard of two performance and two payment bonds required by the terms of two separate contracts entered into by Dale with the United States for construction work on two government installations in the Boston area. The first contract, entered into on June 27,

1950, was for the replacement of a water main at the Boston Army Base. The second contract, entered into about a year later on June 15, 1951, was for the repair of the fire alarm and police signal systems at the South Boston Annex of the Boston Naval Shipyard. The defendants answered and Dale filed counterclaims to recover damages which it alleged it had sustained by reason of Seaboard's wrongful assumption and completion of the work called for by the two contracts.

The District Court empanelled an advisory jury to hear the case but at the close of the evidence on January 28, 1955, it discharged the jury, denied the plaintiff's motion for summary judgment, and, concluding for reasons to be stated presently that it lacked jurisdiction, it orally directed that the plaintiff's complaint be dismissed and by parity of reasoning that both of the defendant Dale's counterclaims also be dismissed. The court said in addition that Seaboard's suit so far as the Naval Shipyard contract was concerned was premature. On January 31, 1955, the court filed findings of fact and conclusions of law embodying in more detail its conclusions expressed orally three days before, and the appellant then seasonably filed motions for a new trial and for amendment of the findings of fact and conclusions of law. These motions were denied on April 29, and on May 4 the court entered judgment dismissing the plaintiff's complaint but making no mention of Dale's counterclaims. The plaintiff thereupon promptly moved that the judgment be amended 1) to provide for dismissal of Dale's counterclaim with respect to the Army Base contract, 2) to make similar disposition of the counterclaim with respect to the Naval Shipyard contract and 3) to provide for the entry of a judgment for the plaintiff in the amount of certain lien claims which it had paid as surety in accordance with the payment bond it had given on the Army Base contract.[1] The District

Court by memorandum dated June 1, 1955, allowed this motion in part. It said that the counterclaim "relating to the Army Base contract may be dismissed, as the evidence was insufficient to show that Seaboard maliciously and wrongfully caused the contract breach." It also dismissed Dale's counterclaim relating to the Naval Shipyard contract, but did so without prejudice, no doubt because of its belief that the suit was premature insofar as that contract was concerned. It then concluded its memorandum with the statement: "I do not feel that the lien amendment should be allowed at this time. It think that it will be necessary to take evidence to show just what the liens pertained to. This can be done in the fall." Thereupon the plaintiff on June 30, 1955, filed notice of appeal and its appeal came on for hearing in this court at our November session. In the meantime, however, the parties had agreed that Seaboard had paid and was entitled to recover lien claims under its payment bond issued in connection with the Army Base contract in the amount of $1,123.95, and on October 27 the District Court had handed down a memorandum to that effect.

At the argument on appeal counsel for the appellees orally suggested for the first time that this court lacked appellate jurisdiction. His position was that Seaboard's appeal should be dismissed as untimely for the reason that its appeal was not taken within 30 days of May 4, 1955, when the judgment was entered dismissing its complaint. And he took the alternative position that Seaboard's appeal should be dismissed as premature in view of the court's action on June 1, 1955, postponing decision on Seaboard's lien claims until evidence could be taken in the fall.

Taken by surprise by this line of argument, we directed counsel for the appellees to file a written motion to dismiss the appeal, and a supporting memorandum, and gave counsel for the appellant an opportunity to file a memoran-

---

[1]. It had apparently not paid any lien claims on the Naval Shipyard contract.

dum in opposition. They complied in due course. But in the meantime on November 7, 1955, counsel for the appellant, in an attempt to clarify the situation, obtained a certificate from the District Court giving a resume of the proceedings and concluding as follows:

"In accordance with the request of the plaintiff under Rule 54(b) I determine that after the disposition of the plaintiff's motion to amend the Judgment of Dismissal in accordance with my memorandum filed on June 1, 1955, there was no just reason for delay in seeking a review of the issues raised by the complaint relating to the Army Base contract, the supplemental complaint relating to the Navy contract and the two counterclaims of Dale Construction Co. The controversy as to the lien claims arose under a separate payment bond on the Army Base contract and was a wholly separable claim."

In addition the court on the same day entered a formal judgment dismissing Dale's counterclaim relating to the Army Base contract with prejudice and its counterclaim relating to the Naval Shipyard contract, again without prejudice, and also another formal judgment for the plaintiff in the stipulated amount of the lien claims ($1,123.95) which it had paid in connection with the Army Base contract, thereby completing final disposition of all claims in issue. Seaboard then as a precautionary measure took a second appeal and that appeal appears on our docket as No. 5064. Then, in this latter appeal, Seaboard moved that the filing of a statement of points, briefs, record appendices, and oral arguments be dispensed with, and that it be considered and disposed of on the papers and arguments of its earlier appeal numbered 5028.

We do not pause to consider the contention of counsel for the appellee that the 30-day period for appeal began to run against Seaboard on May 4, when judgment was entered dismissing its complaint, instead of on June 1 when that judgment was amended on timely motion. The reason for this is that in the absence of compliance with Rule 54 (b) there was no final judgment from which any appeal could be taken until the lien claims on the Army Base contract, decision on which was postponed on June 1 until fall, were finally disposed of by the judgment which was formally entered on November 7, after argument in this court.

The judgment of May 4 as amended on June 1 finally disposed of some of the claims for relief presented in the action, but it did not dispose of all of them. It postponed determination until fall of Seaboard's claim for reimbursement for lien claims paid by it under the Army Base payment bond. Possibly under original Rule 54(b), Fed.Rules Civ.Proc. 28 U.S.C.A. this claim for reimbursement could be considered a claim arising out of a separate and distinct transaction with the result that the balance of the judgment was presently appealable under the doctrine of Reeves v. Beardall, 1942, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478. But we need not attempt to resolve that question, for Rule 54(b) was amended effective on March 19, 1948, Klapprott v. United States, 1949, 335 U.S. 601, 608, 69 S.Ct. 384, 93 L.Ed. 266, to establish a different test of appealability. The Rule now reads:

"(b) Judgment Upon Multiple Claims. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other

form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

Thus, under the Rule as it now reads, the judgment of May 4 as it stood after amendment on June 1 was not an appealable judgment as to the claims determined therein, for the District Court neither expressly directed the entry of a final judgment as to them nor made an express determination that there was no just reason for delay. And as the Rule itself explicitly prescribes in its last sentence: "In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims." An express determination of no just cause for delay and an express direction for entry of a final judgment as to claims disposed of are made essential prerequisites by the Rule to the right to appeal from the decision of those claims. From this it follows that Seaboard's first appeal, No. 5028, which was taken originally in the absence of the determination and direction for the entry of judgment required by the Rule, was abortive and must be dismissed. Winsor v. Daumit, 7 Cir., 1950, 179 F.2d 475 and cases cited.

We do not have occasion here to consider whether the belated determination of the District Court under Rule 54(b) that there was no just reason for delay can be related back, or given retroactive effect, to perfect Seaboard's first appeal. Nor do we have present occasion to decide whether we would adopt the practice in the Second Circuit, Republic of China v. American Express Co., 1951, 190 F.2d 334, 340 and cases cited, and apparently also in the Third Circuit, Etten v. Kauffman, 1950, 179 F.2d 302, 303, of dismissing an appeal such as this for lack of jurisdiction but holding that if upon remand the appellant should obtain from the District Court the certificate required by the Rule and take another appeal, and, if the parties should consent to such a course, we would decide the questions presented on the record as so supplemented. These are extraordinary procedures to be resorted to, if at all, only when absolutely necessary. In this case such procedures are not necessary for Seaboard's second appeal, No. 5064, was timely and is before us and presents the same questions already briefed and argued on the first appeal. Under these circumstances it would be pointless to postpone consideration of the merits until that appeal should be reached in normal course, for presumably we would then consider the merits on the same papers and on a repetition of the same arguments we have already seen and heard. We shall, therefore, grant the appellant's unopposed motion in No. 5064 mentioned above and consider the merits on that appeal without requiring the submission of further papers or arguments.

Seaboard, as stated at the outset of this opinion, is seeking specific performance of two identical contracts of indemnity executed by the defendants in consideration of the issuance by Seaboard of the performance and payment bonds required by the terms of two separate contracts entered into by the defendant Dale with the United States for construction work on two government installations—one the Boston Army Base and the other the South Boston Annex of the Boston Naval Shipyard. Seaboard rests its claim for relief on the following facts, as to which there is little or no dispute.

In June 1950, Dale Construction Co., referred to herein simply as Dale, entered into a standard form contract with the United States to replace the water main at the Boston Army Base. Because of difficulty in obtaining materials, work was not actually begun until late October and thereafter work was delayed by bad weather. In January 1951, the date for completion of the work was extended by agreement until September

28, 1951, but even so the work was not finished by that time, and in October Dale asked for a further extension to June 2, 1952. Its request was not formally granted but a letter from the contracting officer at the Base might perhaps be construed as informally granting some extension. At any rate early in December Dale took its men, except for watchmen, off the job and later that month asked for permission to stop work until spring. Its request was refused but nevertheless Dale did not resume work under its contract.

Not only did work on the job progress slowly but in a number of respects the work done was not performed to the satisfaction of the contracting officer who on several occasions expressed his dissatisfaction to Dale both orally and in writing, and sent copies of his correspondence to Seaboard. In this state of affairs, work still being at a standstill, the contracting officer wrote Dale on January 18, 1952, terminating its right to finish the work called for in the contract. He rested his determination on three grounds: 1) deficiencies in past performance not corrected within a reasonable time after notice thereof, 2) failure to make progress at a rate to insure completion by the specified date as extended, and 3) failure to comply with verbal and written instructions to do the work in accordance with specifications. In the letter the contracting officer notified Dale of its right under article 15 of the contract to appeal his findings within 30 days to the Secretary or his designated representative.

The contracting officer at the same time notified Seaboard of his termination of Dale's contract and asked Seaboard to indicate within ten days, or sooner if possible, whether it would elect to take over and complete the work or whether it would not, in which event the Government would re-advertise for completion by another contractor. Seaboard elected within the time specified to complete the work itself and it procured a contractor who did so at a stipulated cost to it of $31,870.38. In the meantime, however, and before Seaboard made its election, Dale notified Seaboard that it would appeal the contracting officer's findings of default, and Dale did so and eventually prevailed. The Secretary's representative, the Armed Services Board of Contract Appeals, held on June 11, 1954, before this case came on for trial in the court below, that there had been no default by Dale and that its contract should not have been terminated.

The experience of the parties with respect to the Naval Shipyard contract differed in its details but was essentially the same as their experience under the Army Base contract. It will suffice to note that the stipulated cost to Seaboard of completing the Naval Shipyard contract was $34,520.81 and that Dale's appeal to the Armed Services Board of Contract Appeals from the contracting officer's finding of default and conclusion of termination was still pending at the time of trial below and, so far as we know, is still pending.

The District Court took the view that under the decision in United States v. Wunderlich, 1951, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 the finding of the Armed Services Board of Contract Appeals that Dale was not in default on its Army Base contract was, in the absence of evidence of fraud or collusion, final and conclusive not only as between the parties to that contract but also as between the parties to the indemnity agreement entered into between Seaboard and the defendants.[2] Wherefore it concluded that Seaboard had acted at its peril when it stepped in and took over completion of Dale's contract in advance of a final administrative determi-

---

**2.** In view of the basis for our decision to be stated presently it is not necessary to consider whether the surety in this case is bound by the decision of the ASBCA and if bound whether it could appeal to the courts. But it should be noted that the scope of the Wunderlich decision was limited by statute on May 11, 1954, 68 Stat. 81, 41 U.S.C.A. § 321.

nation of the question of default which it knew Dale had requested. On this basis it reached the conclusion that Seaboard was not entitled to recover because its payments to the contractor it employed to finish the job "were voluntary payments as distinguished from payments for which there was liability." Thus it dismissed Seaboard's complaint so far as the Army Base contract was concerned for lack of jurisdiction for in its view, the key issue was Dale's default and that issue under the Wunderlich decision could be litigated only before the Armed Services Board of Contract Appeals.

By the same reasoning the court reached a like result so far as the Naval Shipyard contract was concerned. But as to that contract it dismissed Seaboard's complaint without prejudice as premature because the issue of Dale's default under that contract was still pending before the Armed Services Board of Contract Appeals.

■ It seems to us that the District Court in reaching its result lost sight of the language of the 9th paragraph of the indemnity agreements on which Seaboard brought suit wherein it is provided:

"That the Surety shall, at its option and in its sole discretion, have the right to take possession of all or any part of the work of the said contract, whenever, in its sole opinion, such action is desirable or necessary, and at the expense of the undersigned and each of them to complete, or cause the completion of, any such work, or re-let, or consent to the re-letting or completion of, such contract."

This provision certainly gives Seaboard the whip-hand over the principals. But it is not suggested that the provision is in violation of any specific rule of law, or contrary to public policy, or so unconscionable that it ought not be enforced by a court of equity. And it does not make default by the contractor-principal, Dale, a condition precedent to the right of the surety, Seaboard, to take over and complete all or any part of the work the contractor engaged to perform. It provides instead that the surety has the right to step in and take over the work at the contractor's expense whenever in its sole opinion such action is either desirable or necessary. Thus the basic issue in the case is not whether Dale defaulted on its Army Base contract. It is whether Dale's prosecution of the work under the contract was so slow and so much at variance with specifications, that Seaboard in good faith believed it was either desirable or necessary for it to take over the work in order to protect its interests as surety. And this issue has not been passed upon by the District Court. That court's finding on Dale's counterclaim that "the evidence was insufficient to show that Seaboard maliciously and wrongfully caused the contract breach" points to a finding of Seaboard's good faith in its dealings with its principals but falls short of a clear determination of that issue. The case must, therefore, be remanded for hearing on the issue of Seaboard's good faith, provided the defendants indicate that they have evidence to offer of its bad faith, and decision of that issue. The same must also be done with respect to the Naval Shipyard contract. And, if that issue is resolved in Seaboard's favor, it is entitled to judgment in accordance with its motion to that effect in the stipulated amounts it paid to complete the contracts. The defendants' counterclaim with respect to the Army Base contract has been disposed of. Their counterclaim with respect to the Naval Shipyard contract, however, remains for determination.

Seaboard's first appeal, No. 5028, is dismissed for lack of appellate jurisdiction. On its second appeal, No. 5064, the judgment of the District Court is vacated and set aside and the case is remanded to that court for further proceedings not inconsistent with this opinion; no costs in this court.