Filed 2/8/16  Payne v. American Contractors Indemnity Co. CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Mono)

----

| | |
|---|---|
| LARRY PAYNE, | C072674 |
| Plaintiff and Appellant, | (Super. Ct. No. CV110138) |
| v. | |
| AMERICAN CONTRACTORS INDEMNITY COMPANY, | |
| Defendant and Respondent. | |

Plaintiff Larry Payne doing business as Camouflage Construction (Payne) appeals from a judgment of dismissal entered after the trial court sustained demurrers without leave to amend filed by defendant American Contractors Indemnity Company (American Contractors).  Payne, a general contractor, brought this action against American Contractors stemming from a payment of $10,000 on a surety bond to a homeowner who claimed that Payne had improperly installed windows in her home that subsequently leaked.  Payne protested American Contractors's payment on the bond, arguing that he

1

properly installed the windows, and refused to reimburse American Contractors. Payne alleged that he has been unable to obtain a bond or have his contractor's license reinstated as a result of American Contractors's "activity."

Payne sued American Contractors for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. American Contractors demurred to Payne's original complaint on the ground it failed to state a claim upon which relief could be granted. The trial court sustained the demurrer to the breach of contract and breach of the implied covenant of good faith and fair dealing causes of action with leave to amend, and sustained the demurrer to the declaratory relief cause of action without leave to amend. Payne's first amended complaint alleged causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. American Contractors again demurred on the ground the first amended complaint failed to state a claim upon which relief could be granted, and the trial court sustained the demurrer in its entirety without leave to amend. Thereafter, a judgment of dismissal was entered.

Payne appeals, contending the trial court erred in determining that his complaint and first amended complaint failed to state a claim upon which relief could be granted. Alternatively, he contends the trial court abused its discretion in sustaining the demurrers without leave to amend. We shall reverse the order sustaining the demurrer to the declaratory relief cause of action and the resulting judgment of dismissal. We shall affirm the order sustaining the demurrer without leave to amend to the breach of contract and breach of the implied covenant of good faith and fair dealing causes of action.[1]

---

[1] We deny American Contractors's request to take judicial notice of "California Contractors State License Board file for license history of Camouflage Construction, license number 715317," filed November 6, 2013, as irrelevant to the resolution of the issues raised on appeal.

Payne is engaged in the business of construction and home repair. He holds a contractor's license, which is currently suspended. American Contractors is a licensed insurance surety that is engaged in the business of providing surety bonds.

In 2003, Payne and American Contractors entered into a written indemnity agreement, which provides in pertinent part:

> "IN CONSIDERATION of the execution of such bond and in compliance with a promise of the undersigned made prior thereto, the undersigned individually hereby agree, for themselves, their personal representatives, successors and assigns, jointly and severally, as follows:
> "1. To reimburse [American Contractors] upon demand for all payments made for and to indemnify [American Contractors] from:
> "a) all loss, contingent loss, liability and contingent liability, claim, expense, including attorneys' fees, for which [American Contractors] shall become liable or shall become contingently liable by reason of such suretyship, whether or not [American Contractors] shall have paid same at the time of demand."

On August 27, 2003, following the payment of a $70 premium, American Contractors issued Payne a contractor's bond for the term of one year. The indemnity agreement and bond apparently were renewed in subsequent years.

In June 2007, Susan Bruer made a claim against Payne's bond alleging that Payne had improperly installed windows in her home in 2004 that later allowed water to leak into her home, causing damage. In 2006, prior to making her claim against Payne's bond, Bruer hired contractor Paul Linaweaver, who performed work on the windows. Linaweaver concluded that Payne had improperly removed the existing window frames

---

[2] Because this matter comes to us following a judgment sustaining demurrers without leave to amend, we assume the truth of the material facts properly pleaded in Payne's original and first amended complaints. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We look to the facts set forth in the original complaint to determine whether Payne alleged facts sufficient to state a cause of action for declaratory relief, and otherwise look to the facts alleged in the first amended complaint.

when he installed the windows and estimated that it would cost in excess of $30,000 to correct the problem and repair the resulting damage.

Sometime thereafter, American Contractors inspected the windows and determined that Payne's improper installation caused damage to Bruer's home and estimated that it would cost in excess of $30,000 to repair. A low-level representative of the window manufacturer advised American Contractors that the window frames should not have been removed, and that the new windows should have been installed in the existing window frames.

After concluding its investigation, American Contractors indicated to Payne that it was willing to pay Bruer $10,000 to settle her claim. Payne protested, noting that he followed the installation instructions, which directed that the existing window frames be removed. On December 19, 2007, American Contractors advised Payne that it would pay Bruer $10,000, and that it expected Payne to reimburse it for the payment to Bruer and additional costs totaling at least $11,500. Following payment on the bond, Linaweaver performed the "alleged repairs" to Bruer's home for $10,000.

After paying Bruer's claim, American Contractors refused to issue Payne a new bond and notified the California Contractor State Licensing Board (Board) about Payne's "alleged improper work," the bond payout, Payne's refusal to reimburse American Contractors for the payout, and American Contractors's refusal to issue Payne a new bond. When the Board learned that Payne did not have a bond and failed to reimburse American Contractors, it suspended Payne's license, instituted an administrative proceeding against him, and cited him for the alleged improper work. The Board's action was upheld at the administrative level. In September 2011, the Board dropped the "allegations contained in the citation" after Payne filed a petition for a writ of mandamus.

American Contractors continues to threaten Payne with legal action based on the bond payout and investigation costs associated with the underlying claim. Payne has

4

been unable to obtain a bond from another bond company as a result of American Contractors's "activity as described," and as a result, his license remains suspended.

DISCUSSION

Because this action centers on a surety bond, we begin our discussion with a review of general suretyship principles. A surety bond is "conceptually and legally distinct" from other types of insurance. (*Washington Internat. Ins. Co. v. Superior Court* (1998) 62 Cal.App.4th 981, 989 (*Washington Internat.*) "An insurer undertakes to indemnify another ' "against loss, damage, or liability arising from an unknown or contingent event," whereas a surety promises to "answer for the debt, default, or miscarriage of another." [Citation.]' [Citation.] The surety relationship is a tripartite one, in which the third party (the obligee, or, here, the [homeowner]), rather than the principal (here, [Payne]), is protected by the surety's promise to pay if the principal does not, in exchange for which promise the principal pays the premium for the bond. [Citation.] While an insurer has no right of subrogation against its insured, a surety has every right to reimbursement from its principal. [Citation.] In other words, under a surety bond, the principal is *not* indemnified; the surety can sue the principal for any sums it must pay out to the obligee . . . ." (*Ibid.*)

" 'In general, a surety bond is interpreted by the same rules as other contracts. [Citation.] That is, we seek to discover the intent of the parties, primarily by examining the words the parties have chosen.' [Citation.] The extent of the surety's liability must be gathered from the language used when read in the light of the circumstances surrounding the transaction. Further, when a bond is given to satisfy a statutory obligation, the relevant statutory provisions are incorporated into the bond. [Citation.]" (*First National Ins. Co. v. Cam Painting, Inc.* (2009) 173 Cal.App.4th 1355, 1365.) Here, Payne was required by statute to obtain a contractor's bond for the benefit of any homeowner contracting for home improvements with him or any person damaged by his

5

violation of the statutory provisions governing his contractor's license. (Bus. & Prof. Code, §§ 7071.5 & 7071.10.)

By statute, "[a] surety who has assumed liability for payment or performance is liable to the creditor immediately upon the default of the principal, and without demand or notice." (Civ. Code, § 2807.) The surety's liability is coextensive with that of the principal. (Civ. Code, § 2809; *Cypress v. New Amsterdam Casualty Co.* (1968) 259 Cal.App.2d 219, 225.) Once liability arises, a surety may act to settle the action. (*Arntz Contr. Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 485 (*Arntz Contracting*).) "If a surety satisfies the principal obligation without legal proceedings the principal is bound to reimburse the surety for what he has disbursed." (*Pacific Indem. Co. v. Hargreaves* (1939) 36 Cal.App.2d 338, 343; accord, *Ragghianti v. Sherwin* (1961) 196 Cal.App.2d 345, 351 ["a surety may be entitled to reimbursement by his principal whether or not the surety's payment on behalf of his principal was compelled by actual legal proceedings"].) A surety's right to indemnification is limited to amounts paid in good faith to satisfy the principal's obligation. (*Arntz Contracting*, at p. 482.)

I

The Original Complaint Sufficiently States a Cause of Action for Declaratory Relief

Defendant contends that the trial court erred in sustaining the demurrer to his declaratory relief cause of action because his original complaint set forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties and requested that the rights and duties of the parties be adjudged by the court. We agree that the original complaint sufficiently states a cause of action for declaratory relief, and that the trial court erred in sustaining a demurrer to that cause of action.

In addition to the facts set forth above, Payne's original complaint alleged the following with respect to the declaratory relief cause of action: "38. There exists now an actual and real dispute between Payne and [American Contractors] as to whether [American Contractors] is entitled to reimbursement in excess of $12,000. [¶] 39.

6

[American Contractors's] insistence that Payne reimburse [American Contractors] prevents Payne from reinstating his license which has been suspended for Payne's failure to obtain a bond and failure to reimburse [American Contractors].  [¶]  40.  Payne seeks a determination that the work that Payne performed in 2004 is not improper and that Payne does not have to reimburse [American Contractors] for its decision to pay out on the bond."

In its demurrer to the original complaint, American Contractors argued that Payne's declaratory relief failed to state facts sufficient to constitute a cause of action because it "fails to identify an actual controversy between [Payne] and [American Contractors]."  In particular, American Contractors argued that "[t]he requested relief to determine the work performed by [Payne] in 2004 was proper has nothing to do with a controversy between [Payne] and [American Contractors]."  At the hearing on the demurrer, the trial court asked Payne why it should "care about whether [Payne] should be required to pay [American Contractors] for the original payment on the bond?"  Payne responded that until American Contractors either drops its demand for reimbursement or is "forced to," he cannot get "bonded," and without a bond he cannot get his license reinstated.  American Contractors countered that whether Payne is required to reimburse American Contractors is a "non-issue" since the statute of limitations had run on any claim by American Contractors to reimbursement under the indemnity agreement.  Payne disagreed, explaining that numerous insurance companies have refused to issue him a bond because "of owing this money to [American Contractors]."  The trial court then remarked, "[H]e still is claiming that he is not getting bonded because he owes you money and you are saying he doesn't owe [you] any money."  American Contractors's counsel clarified, "Well, I didn't say he doesn't owe us any money," and explained that while American Contractors could not collect the debt "because of the statute of limitations," it would not issue Payne another bond because it "paid out" and Payne

7

"didn't pay us back."[3]  The trial court sustained the demurrer to the declaratory relief cause of action without leave to amend, explaining that the issue Payne sought to have determined was not "pertinent to this . . . lawsuit."

We decide de novo whether the complaint contains sufficient facts to state a cause of action.  (*Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1552.)  We assume the truth of all facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.  (*Ibid*.)  We also consider judicially noticed matters.  (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)  "Facts appearing in exhibits attached to the first amended complaint also are accepted as true and are given precedence, to the extent they contradict the allegations."  (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1091.)  If the trial court sustained the demurrer without leave to amend, the plaintiff has the burden of proving an amendment would cure the defect.  (*Id*. at p. 1095)  If we find there is a reasonable possibility an amendment could cure the defect, we must reverse the trial court.  (*Ibid*.)

The existence of an " 'actual controversy relating to the legal rights and duties of the respective parties,' suffices to maintain an action for declaratory relief.  (Code Civ. Proc., § 1060.)"  (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 605.)  Code of Civil Procedure section 1060 is clear:  "Any person . . . who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court . . . .  He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a

---

[3]  To date, American Contractors has not brought an action against Payne to recover the payment to Bruer, and as the parties agreed at the hearing on the demurrer, the four-year statute of limitations for bringing such an action has run.  (Code Civ. Proc., § 337 [four-year statute of limitations for action upon any contract, obligation, or liability founded upon a written instrument].)

binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time." Thus, a complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties and requests that the rights and duties of the parties be adjudged by the court. If these requirements are met and no basis for declining declaratory relief appears, the court should declare the rights of the parties whether or not the facts alleged establish the plaintiff is entitled to favorable declaration. (*Ludgate Ins. Co. v. Lockheed Martin Corp.*, *supra*, 82 Cal.App.4th 592, 606, citing *Wellenkamp v. Bank of America* (1978) 21 Cal.3d 943, 947.)

Here, Payne's original complaint sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties, namely whether American Contractors is entitled to reimbursement from Payne for the payout to Bruer and expenses related thereto, and sets forth facts in support of that allegation. Among other things, Payne alleges that he protested the payout to Bruer on the ground he properly installed the windows in accordance with the manufacturer's instructions; American Contractors sought reimbursement from him for the payout; and American Contractors's insistence that he reimburse it has prevented him from obtaining a bond and having his license reinstated.

That the statute of limitations has run for American Contractors to sue Payne for reimbursement does not mean there is no longer an actual controversy to resolve as American Contractors contends. Payne seeks a declaration with respect to his obligation "to reimburse [American Contractors] for its decision to pay out on the bond"--not American Contractors's right to judicially enforce that purported obligation. The running of the statute of limitations as to the latter does not obviate the controversy as to the former. (See, e.g., *Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29, 40.) Indeed, at the hearing on the demurrer, American Contractors's counsel confirmed that while American Contractors can no longer sue Payne for reimbursement, it still

9

considers him to be indebted to it for the monies it paid to Bruer and the expenses related thereto. And it is this purported debt that Payne alleges continues to prevent him from obtaining another bond and having his license reinstated. Accordingly, the trial court erred in sustaining the demurrer to this remedy as the cause of action was legally sufficient.

## II
### The Trial Court Properly Sustained the Demurrer to the Breach of Contract Cause of Action Without Leave to Amend

Defendant next contends that the trial court erred in sustaining the demurrer to his breach of contract cause of action because he sufficiently alleged "the existence of an agreement, [his] performance under it, the breach of the agreement by [American Contractors], and damages." Alternatively, he contends that even if the demurrer was properly sustained, the trial court abused its discretion in sustaining it without leave to amend. We disagree with both contentions.

In addition to the facts set forth above, Payne's first amended complaint alleged in pertinent part: "32. Payne and [American Contractors] entered into a written contract in 2003 or thereabouts which [American Contractors] would provide a $10,000 surety bond in return for Payne paying a premium. [¶] 33. [American Contractors] agreed to pay only those claims which [American Contractors] 'shall become liable or shall become contingently liable for by reason of such suretyship.' " [¶] 34. Payne has performed all contractual obligations or has been excused for performing due to [American Contractors's] breach of [*sic*] other reason. [¶] 35. [American Contractors] paid out on a claim that [American Contractors] was no [*sic*] liable or contingently liable for by reason of such suretyship."

American Contractors demurred to the breach of contract cause of action on the ground that Payne "provides no facts as to what contractual obligations of the contract were breached by [American Contractors]." More particularly, it asserted that Payne

10

"appears to contend that [American Contractors] breached the contract because [American Contractors] was not liable or contingently liable to the homeowner. This argument is a defense if [American Contractors] was seeking reimbursement from [Payne] for [American Contractors's] losses under the Indemnity Agreement. However, [American Contractors's] liability or non-liability to the homeowner does not render [American Contractors] in breach of the indemnity agreement with [Payne]." Payne opposed the demurrer, noting that he "alleges that the breach is both the improper payout by [American Contractors] and [American Contractors's] payment of a bond it was not legally obligated to pay."

The trial court sustained the demurrer to the breach of contract cause of action, reasoning: "[I]f you look at the indemnity agreement, [American Contractors] performed. There was no obligation in that particular agreement . . . other than to execute a bond for [Payne] and which [American Contractors] did. [¶] [American Contractors's] liability or nonliability to the homeowner doesn't render [American Contractors] in breach of the indemnity agreement." The court further found that American Contractors's "demand in a letter for payment is not a breach of their promise to provide and pay a bond."

The elements of breach of contract are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388 *(Careau & Co.)*.)

Contrary to Payne's allegation in the first amended complaint, American Contractors did not "agree[] to pay only those claims which [American Contractors] 'shall become liable or shall become contingently liable for by reason of such suretyship.' " Rather, the parties agreed that Payne would be required to reimburse American Contractors only for those claims which American Contractors "shall become liable or shall become contingently liable by reason of such suretyship." (*Paul v. Patton*,

11

*supra*, 235 Cal.App.4th at p. 1091 [facts appearing in exhibits to complaint prevail over conflicting allegations in complaint itself].)  Thus, American Contractors's payment to Bruer did not constitute a breach of the indemnity agreement regardless of whether it was "liable" for the claim.

To the extent Payne contends that American Contractors's demand for reimbursement constituted a breach of the indemnity agreement, he is mistaken.  The indemnity agreement obligated American Contractors to execute a contractor's bond, which it did.  The indemnity agreement obligated Payne to reimburse American Contractors for claims American Contractors "shall become liable or shall become contingently liable by reason of such suretyship."  If, as Payne alleges, American Contractors sought reimbursement for a payment made on a claim that it was not liable or contingently liable for, such a circumstance would provide Payne with a defense to an action by American Contractors--not a basis for a breach of contract action against American Contractors.

*Ragghianti v. Sherwin* (1961) 196 Cal.App.2d 345 (*Ragghianti*), cited by Payne, illustrates this point.  Unlike the present case, *Ragghianti* involved an action by a surety seeking reimbursement for a payment allegedly made on behalf of the defendant.  (*Id.* at p. 346.)  The defendant moved for summary judgment based on the theory that there was no right to reimbursement because the payment was voluntary.  In affirming the summary judgment in favor of the defendant, the Court of Appeal noted that under the terms of the bond and the agreement with the County of Contra Costa, the surety was bound to the county alone, and its payment in settlement of a contractor's claim was not made under any legal compulsion, but as a mere volunteer.  (*Id.* at pp. 350-351.)  To the extent Payne claims that American Contractors's payment to Bruer was not made under any legal compulsion, such a claim is properly asserted as a defense in an action by American Contractors for reimbursement.  As set forth above, American Contractors has not brought an action against Payne to recover the payment to Bruer and is barred from doing

12

so in the future under the applicable statute of limitations. (*Ante,* fn. 3.) For all the foregoing reasons, we conclude that Payne's first amended complaint fails to state a breach of contract cause of action.

In his reply brief, Payne contends that in the event we determine, as we have, that the first amended complaint fails to state a breach of contract cause of action, the trial court abused its discretion in sustaining the demurrer without leave to amend. Payne proposes an amendment that focuses on American Contractors's alleged payment of a claim it was not "legally obligated" to pay. We can discern no material difference between the allegations in the first amended complaint and Payne's proposed amendments thereto. To the extent Payne's use of the phrase "legally obligated" is intended to mean "compelled by actual legal proceedings," we note that "a surety may be entitled to reimbursement by his principal whether or not the surety's payment on behalf of his principal was compelled by actual legal proceedings." (*Ragghianti, supra,* 196 Cal.App.2d at p. 351.) Because plaintiff has failed to show that amendment would cure the defect, the demurrer was properly sustained without leave to amend.

### III
### The Trial Court Properly Sustained the Demurrer to the Breach of the Implied Covenant of Good Faith and Fair Dealing Cause of Action Without Leave to Amend

Lastly, Payne contends that the trial court erred in sustaining the demurrer to his breach of the implied covenant of good faith and fair dealing cause of action because he "alleges breach of contract and then pleads that all contracts have an implied duty of good faith and fair dealing," American Contractors breached that duty, and he was damaged by its breach. Alternatively, he contends that even if the demurrer was properly sustained, the trial court abused its discretion in sustaining it without leave to amend. We disagree with both contentions.

In his first amended complaint, Payne incorporates all prior allegations and then alleges in pertinent part as follows: "38. All contracts have implied in the agreement a

13

duty of good faith and fair dealing. [¶] 39. [American Contractors] breached the implied duty of good faith and fair dealing. [¶] 40. Payne has been damaged thereby."

In its demurrer to the first amended complaint, American Contractors argued that Payne failed to "identify what actions of [American Contractors] constituted a breach of the covenant of good faith and fair dealing." Payne opposed the demurrer, citing to allegations in the first amended complaint concerning American Contractors's investigation of Bruer's claim. American Contractors responded that "any alleged claim for improper investigation of the bond claim" is barred by the applicable four-year statute of limitations. The trial court sustained the demurrer as to the breach of the implied covenant of good faith and fair dealing cause of action without leave to amend.

On appeal, Payne contends that he adequately pleaded a cause of action for breach of the implied covenant of good faith and fair dealing by alleging breach of a contract, again citing to allegations concerning American Contractors's investigation of Bruer's claim. Those allegations read as follows: "17. [American Contractors] alleged to conduct an inspection of Payne's work although as indicated work was performed by Paul Linaweaver on the windows prior to any inspection by [American Contractors]. [¶] 18. [American Contractors] appeared to rely on information provided by Paul Linaweaver in determining that Payne's installation of the windows was improper and damaged Bruer including that the cost of repair would exceed $30,000. [¶] 19. [American Contractors] also contacted the manufacture[r] of the window whose low level representative indicated that the window frames should not be removed prior to installation of the new windows but instead the windows should be installed in the existing window frames. [¶] 20. [American Contractors] then indicated to Payne a willingness to pay the sum of $10,000 to Bruer. [¶] 21. Payne protested in many respects but most significantly pointed to the installation directions of the installed windows which explicitly called for the removal of the existing window frames in order to install properly the new windows which Payne followed when he installed the

14

windows. [¶] 22. [American Contractors] discounted Payne's protests and informed Payne through Payne's counsel on December 19, 2007 that [American Contractors] would pay Bruer $10,000 and that [American Contractors] expected Payne to reimburse [American Contractors] for the payment to Bruer and additional costs for an amount of at least $11,500. [¶] 23. Following payment on the bond, Linaweaver performed the alleged repairs to Bruer for $10,000. [¶] 24. Subsequent to the decision of [American Contractors] to pay Bruer's claim, [American Contractors] refused to issue a new bond to Payne."

" 'The covenant of good faith and fair dealing . . . [is] implied by law in every contract . . . .' " (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1369.) It is read into contracts and functions " 'as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.' " (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031-1032.) The covenant also requires each party to do everything the contract presupposes the party will do to accomplish the agreement's purposes. (*Harm v. Frasher* (1960) 181 Cal.App.2d 405, 417.) A breach of the implied covenant of good faith is a breach of the contract (*Careau & Co., supra,* 222 Cal.App.3d at p. 1393), and "breach of a specific provision of the contract is not . . . necessary" to a claim for breach of the implied covenant of good faith and fair dealing (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373).

To prevail on his breach of the implied covenant of good faith and fair dealing cause of action, Payne must establish that American Contractors acted in bad faith in evaluating Bruer's claim or in seeking reimbursement from Payne. (*Arntz Contracting, supra,* 47 Cal.App.4th at pp. 483-484.) Bad faith is not the equivalent of evil motive. Rather, " 'the covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive.' [Citation.]" (*Id.* at p. 483.) For example,

indemnification from the contractor is properly denied where the surety pays expenses which are " 'unnecessary and unwarranted' " or "without 'rational justification.' " (*Id.* at pp. 483-484.)  Good faith does not require omniscience.  For example, a surety acts in good faith when it settles a claim after determining it is liable or contingently liable by reason of the suretyship, even if the principal/contractor later establishes it was not technically at fault.  (See, e.g., *Seaboard Surety Co. v. Dale Const. Co.* (1st Cir. 1956) 230 F.2d 625, 630 (*Seaboard*).)

Here, the first amended complaint is devoid of any allegations that would support a finding that American Contractors acted in bad faith.  Even if Payne could somehow establish years after the fact that he properly installed the windows, it does not follow that American Contractors acted in bad faith in settling Bruer's claim or in seeking reimbursement from Payne.  (See *Seaboard, supra,* 230 F.2d at p. 630.)      In the event we determine, as we have, that the first amended complaint fails to state a cause of action for breach of the implied covenant of good faith and fair dealing, Payne asserts that he could amend the complaint to adequately state such a claim as follows:  American Contractors "promised not to seek reimbursement unless [it] was legally obligated to do so.  [It] did not determine whether [it] was legally obligated to do so prior to paying out a claim against Payne's bond.  By failing to obtain a determination of whether [it] was legally obligated to do so or by paying out on a bond claim that [it] was not legally obligated to do so and by then seeking reimbursement from Payne and so notifying the Contractors Board, [American Contractors] breached the parties' agreement."  As previously discussed in connection with the breach of contract cause of action, American Contractors made no such "promise."  Rather, pursuant to the indemnity agreement, the parties agreed that Payne would be required to reimburse American Contractors only for those claims which American Contractors "shall become liable or shall become contingently liable by reason of such suretyship."  Moreover, "a surety may be entitled to reimbursement by his principal whether or not the surety's payment on behalf of his

16

principal was compelled by actual legal proceedings." (*Ragghianti, supra,* 196 Cal.App.2d at p. 351.)  Because plaintiff has failed to show that amendment would cure the defect, the demurrer to the breach of the implied covenant of good faith and fair dealing cause of action was properly sustained without leave to amend.

## DISPOSITION

We reverse the order sustaining American Contractors's demurrer to the declaratory relief cause of action without leave to amend and the ensuing dismissal of the same, and remand for further proceedings consistent with this opinion.  The order sustaining the demurrer to the breach of contract and breach of the implied covenant of good faith and fair dealing causes of action without leave to amend is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


                              /s/
                              Blease, Acting P. J.


We concur:



    /s/
    Butz, J.



    /s/
    Mauro, J.


17